2003 ME 80

**INTERNATIONAL WOOLEN COMPANY, INC.**

v.

**TOWN OF SANFORD**

Supreme Judicial Court of Maine.

Argued: Feb. 12, 2003.
Decided: June 23, 2003.

John C. Bannon, John B. Shumadine, (orally), Murray Plumb & Murray, Portland, for plaintiff.

William H. Dale, Angela G. Crocker, (orally), Jensen Baird Gardner & Henry, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] International Woolen Company, Inc. (IWC) appeals from a judgment entered in the Superior Court (York County, *Fritzsche, J.*), affirming a decision of the State Board of Property Tax Review dismissing IWC's appeal to the State Board. The State Board concluded that it did not have jurisdiction to hear IWC's appeal because IWC's earlier appeal to the Sanford Board of Assessment Review from the denial of its tax abatement applications by the Town was not filed in a timely manner. We are persuaded by IWC's contention that its appeals from the Town's denial to the Sanford Board of Assessment Review and from the Sanford Board to the State Board were timely. Accordingly, we vacate the judgment.

I.

[¶ 2] IWC owns six different parcels of real estate in the Town of Sanford. On September 28, 1999, IWC filed applications for real estate tax abatement for all six parcels, which the Town received on September 30, 1999. By letter from the Town's assessor dated February 21, 2000, received by IWC on March 3, the Town notified IWC that all six abatement requests were denied. On April 20, 2000, IWC filed an appeal from the Assessor's decision to the Sanford Board of Assessment Review. *See* 36 M.R.S.A. § 843(1) (Supp.2002). The Sanford Board did not act on IWC's appeal, and, pursuant to the deemed denial provision in section 843(1–A), on August 17, 2000, IWC appealed the deemed denial to the State Board of Property Tax Review. *See id.* § 843(1–A). The Town filed with the State Board a motion to dismiss the appeal based on lack of jurisdiction.

[¶ 3] At a hearing before the State Board, Theresa Pepin, IWC's financial manager, testified that, in August of 1999, the owner of IWC directed Pepin to review the 1999 taxes. Pepin informally discussed the valuations with the Town's assessor, Lawrence Dolby, who told Pepin that he determined that the assessments were fair and equitable. Pepin contacted the owner, who advised her to proceed with the abatement process, and she put the abatement applications together and sent them to the assessor's office in September of 1999.

[¶ 4] Not hearing back from the assessor, Pepin called Dolby on November 4, 1999. According to Pepin, Dolby told her that he had been very busy and had not had a chance to go through her abatement applications yet, and that he would call her if he had any questions when he did start looking through them. Pepin testified that in early December, Dolby, along with his assistant, arrived at the mill unannounced and requested that she walk them through the mill, which she did. At no point did Dolby ever tell her that the applications had been deemed denied.

[¶ 5] Pepin heard nothing further from Dolby, and made several calls to his office, leaving messages that she was checking on the abatement applications. On March 3, 2000, Dolby and his assistant came to Pepin's office with some documents that he reviewed with her, and explained why the abatement applications were being denied. The documents Dolby gave to Pepin included a letter, dated February 21, 2000, from Dolby to Pepin, regarding the applications for abatement, which individually listed all six properties and briefly explained why the abatement request for each parcel was denied. For each parcel the letter stated that "[t]his abatement

request is **Denied.**" Further, the letter stated: "**This request, in its entirety, from International [W]oolen Company is DENIED.**" (Emphasis in original.) The letter concluded by stating that "[t]he decision of this office is appealable as directed by state statue. This office will assist in the process if so requested." *See* 36 M.R.S.A. § 843.

[¶ 6] Pepin testified that, during that March 3rd meeting, she was never told that she could not go forward with the abatement because it had been deemed denied. The first time Pepin recalls hearing the Town's position that the abatement had been deemed denied was from IWC's attorney when Pepin met with her in late March or early April.

[¶ 7] Dolby testified at the hearing that he reviewed the figures for IWC before the commitment date, upon request from Pepin, and found that the numbers were fair. After sending out the tax bills, he received applications for abatement for IWC from Pepin dated September 27, 1999. Dolby did not make any changes or take any action; he merely waited for the sixty days to run so that the application would be deemed denied. After the sixty days had run on November 29, 1999, he decided to review his assessments and go over the property again in case the deemed denial was appealed to the local board, which could happen in the next sixty days. *See* 36 M.R.S.A. § 843(1). On December 13, 1999, he toured the plant, and Pepin told him that she had requested payment of the taxes from her superiors. According to Dolby, he wrote the February 21, 2000 letter only when requested to do so by Pepin, to give Pepin something to convince her superiors to pay the taxes. He delivered the letter personally on March 3, 2000. He admitted that the letter, on its face, appears to be a denial of the abatement requests and contains a

statement that IWC has the right to appeal the decision denying the abatements. Dolby testified that he made a mistake in writing the letter as if it was a denial of the abatement applications. He testified that the reason he waited to write and deliver the letter was to make sure that the time period for IWC to appeal the deemed denial to the local board had expired.

[¶ 8] The State Board deliberated and, by a three to two vote, granted the Town's motion to dismiss the appeal for lack of jurisdiction. The State Board found that IWC had not implicitly agreed to extend the time for Dolby to consider its abatement applications, and, therefore, IWC had failed to file a timely appeal to the local board within sixty days of the Town's deemed denial. Because the appeal to the Sanford Board of Assessment Review was not timely, the State Board concluded that it had no jurisdiction to entertain IWC's appeal from the Sanford Board and dismissed it without reaching the substantive merits

[¶ 9] The Superior Court affirmed the decision of the State Board and this appeal followed.

## II.

[¶ 10] When the Superior Court acts in its appellate capacity pursuant to M.R. Civ. P. 80C, we review the administrative decision directly, and our review is limited to whether the administrative body abused its discretion, committed an error of law, or made findings that were not supported by substantial evidence. *Munjoy Sporting & Athletic Club v. Dow,* 2000 ME 141, ¶ 6, 755 A.2d 531, 536.

[¶ 11] Section 841(1) requires a taxpayer to file an abatement application within 185 days from the commitment date. 36 M.R.S.A. § 841(1) (Supp.2002). Pursuant

to section 842, the assessors are required to give written notice of their decision on the abatement application within ten days after they take final action, and the notice must state that the applicant has sixty days from the date of the notice to appeal.[1] 36 M.R.S.A. § 842 (Supp.2002). If the assessor fails to give written notice of a decision on the application within sixty days from the date of filing, then the application is deemed denied unless the taxpayer has consented to further delay. *Id.* The taxpayer has sixty days from a denial or a deemed denial to appeal to the local board of assessment review (in this case the Sanford Board of Assessment Review). *Id.* § 843(1). If the local board does not act within sixty days from when the appeal is filed, then the appeal is deemed denied and the taxpayer has sixty days to appeal to the State Board of Property Tax Review. *Id.* § 843(1–A).

[¶ 12] Although the statute explicitly provides that the taxpayer can consent in writing to extend the sixty-day period within which the assessor must act, in *Town of Vienna v. Kokernak,* 612 A.2d 870, 874 (Me.1992), we concluded that such an extension can be implicit.[2] In *Kokernak,* the Town argued that it was entitled to a judgment as a matter of law because the municipal officers failed to decide the taxpayers' appeal within sixty days. *Id.* at 873–74. The Town argued that because none of the taxpayers agreed in writing to an extension, then the applications were denied as a matter of law and the municipal officers did not have jurisdiction to issue a decision. *Id.* at 874. We disagreed and stated:

> The purpose of the statute ... is to protect a taxpayer from the [municipal officers'] failure to act. The statute gives the taxpayer the right to proceed to another forum if the [municipal officers] do not make a decision with the requisite period of time. In this case the taxpayers implicitly agreed to a delay in the [municipal officers'] decision.

*Id.*

[¶ 13] IWC contends that the record demonstrates that IWC implicitly agreed to extend the time for the assessor to act and that the State Board's conclusion that there was no implicit agreement to extend the time is unsupported by the record. IWC also contends that we need not reach the implicit extension issue in this case because the Town's February 21st letter, which comports with the notice require-

1. Title 36 M.R.S.A. § 842 (Supp.2002) states as follows:
   § 842. Notice of decision
   The assessors or municipal officers shall give to any person applying to them for an abatement of taxes notice in writing of their decision upon the application within 10 days after they take final action thereon. The notice of decision must state that the applicant has 60 days from the date the notice is received to appeal the decision. It must also identify the board or agency designated by law to hear the appeal. If the assessors or municipal officers, before whom an application in writing for the abatement of a tax is pending, fail to give written notice of their decision within 60 days from the date of filing of the application, the application is deemed to have been denied, and the applicant may appeal as provided in sections 843 and 844, unless the applicant has in writing consented to further delay. Denial in this manner is final action for the purposes of notification under this section but failure to send notice of decision does not affect the applicant's right of appeal. This section does not apply to applications for abatement made under section 841, subsection 2.

2. *Kokernak* arose under 36 M.R.S.A. § 844 (1990 & Supp.2002), which deals with tax abatement review by county commissioners. All the parties agree, however, that it is equally applicable to sections 842 and 843 for towns that have assessors and assessment review boards.

844

ments of section 842, constitutes the notice to IWC from which the sixty-day appeal period begins to run and within which the sixty-day period IWC filed its appeal. We agree.

[¶ 14] Section 842 states in pertinent part as follows:

> The assessors ... shall give to any person applying to them for an abatement of taxes notice in writing of their decision upon the application within 10 days after they take final action thereon.... If the assessors ... fail to give written notice of their decision within 60 days from the date of filing of the application, the application is deemed to have been denied, and the applicant may appeal .... Denial in this manner is final action for the purposes of notification under this section but failure to send notice of decision does not affect the applicant's right of appeal.

36 M.R.S.A. § 842 (Supp.2002). Pursuant to the statute, when the Town failed to give IWC a decision on its abatement applications within sixty days, the application was deemed denied. *See id.* The Town, however, did not lose authority to act after the sixty-day period, and the written notice of denial contained specific language stating that IWC could appeal the denial. Such documentation is not without legal significance. The Town, by the action of its assessor, reconsidered the application and denied it again. Such action, as explicitly provided in the notice, reinstated IWC's appeal rights.

[¶ 15] The February 21st letter delivered on March 3rd acted as a denial of the abatement applications upon reconsideration. IWC's appeal to the local Board from the February 21st written denial was within sixty days and timely, as was its appeal from the deemed denial of the Sanford Board to the State Board. Accordingly, the State Board had jurisdiction to

hear IWC's appeal, and it erred in granting the Town's motion to dismiss.

The entry is:

Judgment vacated. Remanded to the Superior Court for remand to the State Board of Property Tax Review for further proceedings consistent with this opinion.