STATE

v.

**Thomas G. CARTER.**

**No. 2001–629–C.A.**

Supreme Court of Rhode Island.

July 1, 2003.

---

Jane McSoley, Esq., Providence, for Plaintiff.

Thomas Dickinson, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, JJ., and WEISBERGER, C.J. (Ret.).

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court for oral argument on May 6, 2003, on appeal by the defendant, Thomas G. Carter (Carter or defendant), from a Superior Court judgment of conviction for violating a domestic abuse protective order after twice having been convicted of a crime of domestic violence, pursuant to G.L.1956 § 15–15–3 and G.L.1956 § 12–29–5(c)(1)(ii), a felony. The defendant argues that jurisdiction of this crime is vested in the District Court by statute, and that the Superior Court was without jurisdiction to adjudicate this offense. Carter also assigns as error the denial of a motion for judgment of acquittal based on the state's failure to establish his guilt on each element of the offense. Further, Carter argues that the trial justice erred in refusing his offer to stipulate under circumstances that evidence that he had twice previously been convicted of violating the provisions of a domestic abuse restraining

order would be kept from the jury. Finally, defendant challenges the admission of hearsay testimony.

### Facts and Travel

The defendant, Carter and the complainant, Michelle Carter Callahan (Callahan), were married in 1986 and separated in 1995. They were finally divorced in 1997, after an acrimonious period of separation during which Callahan was forced to seek domestic abuse protection from the Family Court. The evidence disclosed that during the marriage, separation and well after their divorce, Carter subjected his former wife to a series of confrontational encounters that resulted in criminal prosecutions, probation, jail time and finally, this felony prosecution for which he has been sentenced to a period of six years at the Adult Correctional Institutions, three years to serve, the remaining term suspended, with probation.

On October 31, 1995, defendant was found guilty in the District Court of violating a domestic abuse protective order that had been issued six months earlier by a justice of the Family Court. Carter was given a one-year suspended sentence and, pursuant to § 12–29–4, the District Court trial judge also imposed a no-contact order. Less than one year later, on September 5, 1996, defendant entered a plea of *nolo contendere* to a violation of that order, and was ordered to serve one month of a one-year sentence. On January 5, 2000, the Family Court issued a third domestic abuse protective order that prohibited Carter from communicating or having contact with his former wife. The defendant was not dissuaded from harassing and threatening her, however, and was arrested for a third violation of a protective order. This third violation, charged as a felony, is the subject of the present appeal.

On the afternoon of May 2, 2000, Callahan was en route to the Family Court in Providence with her two daughters for a scheduled supervised visit with Carter, their father. According to Callahan, while they were traveling south on Route 146, a black Thunderbird vehicle pulled beside her, then cut in front of her and suddenly stopped, causing her to veer off the road into the breakdown lane. She identified the driver as her former husband who, she testified, turned around and smiled at her while he obscenely gestured with his hand. He then drove off. This entire encounter was confirmed at trial by the testimony of Callahan's teenage daughter, who witnessed her father's behavior. Shaken by the incident, Callahan phoned the Family Court and alerted the visitation supervisor of the situation. At the supervisor's suggestion, Callahan proceeded to the Family Court complex for the scheduled visit; however, only her youngest daughter visited with her father that day. Before returning home, Callahan drove to the North Providence police headquarters and filed a complaint against Carter for violating the most recent Family Court domestic abuse restraining order. The defendant initially was charged with a misdemeanor, pursuant to the provisions of § 15–15–3(d)(1).[1] However, because this incident purportedly marked his third violation of a protective order, Carter later was charged by way of criminal information with committing a crime of domestic violence, a felony,

---

1. General Laws 1956 § 15–15–3(d)(1) provides:

    "Any violation of a protective order under this chapter of which the defendant has actual notice shall be a misdemeanor which shall be punished by a fine of no more than one thousand dollars ($1,000) or by imprisonment for not more than one year, or both."

as enumerated in § 12–29–5(c)(1)(ii).[2] After a two-day jury trial in Superior Court, Carter was found guilty of felony domestic violence.

In pretrial proceedings before the Superior Court, defendant sought dismissal of the information on the ground that the statute under which he was charged requires that a defendant be afforded actual notice of the restraining order. Carter argued that the information failed to include any evidence that defendant had been provided with actual notice of the third and final restraining order. Because the state's evidence disclosed that defendant was present in court when the final order was issued, the hearing justice denied this motion.

Immediately before trial, Carter again argued for dismissal of the information on the ground that actual notice of the order was a prerequisite to prosecution. In accordance with the earlier finding by the Superior Court hearing justice, the trial justice denied this motion and concluded that defendant was present in Family Court with counsel on January 5, 2000, when the final order of protection was issued and that the order specifically included the penalty provision mandated by statute.

The defendant also moved for dismissal of the information arguing that original jurisdiction of this offense was vested in the District Court and not the Superior Court. According to defendant, the provisions of § 15–15–3(f)(1)[3] specifically commit jurisdiction of all adult violations of chapter 15 of title 15 in the District Court. The hearing justice denied this motion.

At the close of the state's case and again at the close of the evidence, Carter moved for a judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. The defendant again raised the jurisdictional issue and contended that the Superior Court lacked subject matter jurisdiction of this felony offense because § 15–15–3 specifically vests jurisdiction of adult offenses under that chapter in the District Court. Additionally, defendant raised for the first time, a defect in the state's proof; that is, that his second conviction for violating a no-contact order was not a qualifying offense pursuant to the provisions of §§ 12–29–2 and 12–29–5. Specifically, Carter contended that his second conviction for violating a no-contact order was issued by a judge of the District Court pursuant to the provisions of § 12–29–4, and was not an enumerated offense pursuant to § 12–29–2.[4]

---

**2.** General Laws 1956 § 12–29–5, entitled "**Disposition of domestic violence cases**" provides in part as follows:

"(c)(1) Every person convicted of an offense punishable as a *misdemeanor* involving domestic violence as defined in § 12–29–2 shall:

" * * *

"(ii) For a third and subsequent violation be deemed guilty of a felony and be imprisoned for a term of not less than one year and not more than ten (10) years."

**3.** Section 15–15–3(f)(1) provides that "[t]he [D]istrict [C]ourt shall have criminal jurisdiction over all adult violations of this [Domestic Abuse Prevention] chapter."

**4.** At the time of this prosecution, § 12–29–2 entitled, "**Definitions**," defined the crime of domestic violence as follows:

"(a) 'Domestic violence' includes, but is not limited to, any of the following crimes when committed by one family or household member against another:

" * * *

"(10) Violation of the provisions of a protective order entered pursuant to § 15–5–19, chapter 15 of title 15, or chapter 8.1 of title 8 where the respondent has knowledge of the order and the penalty for its violation * * *."

This section was amended by the General Assembly in 2001 to include a violation of a no-contact order issued pursuant to the provisions of § 12–29–4. *See* P.L.2001, ch. 259.

The state vigorously argued against an acquittal and contended that jurisdiction properly was vested in the Superior Court because defendant was charged with a felony offense carrying a maximum penalty of ten years imprisonment. Secondly, although acknowledging that a violation of a District Court no-contact order was not specifically enumerated in § 12–29–2, the state pointed to the broad definitional language in § 12–29–2, that "domestic violence" includes, "but is not limited to, any of the following crimes when committed by one family or household member" against another family or household member. According to the state, the declared purpose of the Domestic Violence Prevention Act would be frustrated if § 12–29–2 were limited to the specific enumerated offenses. The trial justice agreed with this reasoning and denied the motion.

After the verdict of guilty, Carter moved for a new trial, again arguing that the Superior Court lacked jurisdiction to entertain this offense and further, that the verdict was against the law and the evidence. Additionally, Carter moved to arrest the judgment pursuant to Rule 34 of the Superior Court Rules of Criminal Procedure and renewed his jurisdictional arguments and his contention that the criminal information failed to charge an offense because a conviction for violating a no-contact order was not an enumerated offense in the felony statute.[5] Both motions

were denied by the trial justice, who carefully considered the arguments and concluded, as he previously had held, that the Superior Court, not the District Court, was vested with jurisdiction over felony offenses, and further, that the District Court does not provide, by statutory or constitutional law, for a jury trial as opted by defendant. Further, the trial justice found that the state's witnesses were credible, that the jury verdict did substantial justice between the parties and that the state had met its burden of proving each element of the crime beyond a reasonable doubt. Carter was sentenced to serve three years in prison and was released on bail pending this appeal.

### Issues

Carter seeks reversal of his conviction because, he contends, the Superior Court was not the appropriate forum for this prosecution and that original jurisdiction was vested in the District Court. He argues that, although the Superior Court generally has original felony jurisdiction pursuant to G.L.1956 § 8–2–15, this statutory vesting of jurisdiction is not without limits as mandated by the General Assembly.[6] Accordingly, notwithstanding that § 12–29–5(c)(1)(ii) designates this offense as a felony carrying a maximum punishment of ten years imprisonment, defendant contends the specific statutory grant of jurisdiction to the District Court in § 15–

---

**5.** Rule 34 of the Superior Court Rules of Criminal Procedure provides:

> "**Arrest of Judgment.**—The court on motion of a defendant shall arrest judgment if the indictment, information, or complaint does not charge an offense or if the court was without jurisdiction of the offense charged. The motion in arrest of judgment shall be made within ten (10) days after verdict or finding of guilty, or after plea of guilty or nolo contendere, or within such further time as the court may fix during the 10–day period."

**6.** General Laws 1956 § 8–2–15 provides:

> "**Criminal jurisdiction.**—The [S]uperior [C]ourt shall have original jurisdiction of all crimes, offenses, and misdemeanors, *except as otherwise provided by law*, and shall sentence all persons found guilty before it to the punishment prescribed by law. All indictments found by grand juries shall be returned into the court." (Emphasis added.)

15–3(f)(1) over "all adult violations of this chapter" is controlling and deprives the Superior Court of jurisdiction.

In its prebriefing statement to this Court, the state contended that defendant was incorrect in asserting that he was charged with a violation of § 15–15–3. The state suggested that the offense more accurately was a violation of chapter 29 of title 12, the felony provision. Because the definition of domestic violence as set forth in § 12–29–2 includes not only violations of protective orders issued pursuant to § 15–15–3,[7] but also a host of other offenses, including murder, kidnapping, child-snatching, sexual assault, and felony assault—felonies that are not cognizable in the District Court—the state argued that jurisdiction is vested in the Superior Court and that defendant's argument was without merit.

However, upon brief and oral argument, the state's rationale to support its argument in favor of the Superior Court's jurisdiction has wavered. The state now argues that although § 15–15–3(f)(1) grants jurisdiction to the District Court for "adult violations of this chapter[,]" this jurisdiction was neither exclusive nor original. The state contends that the General Assembly certainly is capable of vesting exclusive jurisdiction in the District Court or any other court and, although knowing full well how to accomplish that result, it did not do so in this instance. The state urges this Court to hold that the Legislature did not intend, on the basis of the language in § 15–15–3, to divest the Superior Court of its own well-established statutory jurisdiction over felony offenses.

■ Additionally, the defendant assigns error to the denial by the trial justice of

his motion for judgment of acquittal. Carter raises two discrete arguments. First, he contends that by failing to allege and prove that Carter had been provided with actual notice of the Family Court restraining order issued on January 5, 2000, the state failed to establish his guilt on every essential element of the offense. We are satisfied that this issue was not preserved for appellate review because it was not raised at the close of the state's case nor was it argued at the close of the evidence.

Secondly, Carter argued to the trial justice and again to the Supreme Court that a conviction for violating a no-contact order issued pursuant to § 12–29–4 was not, at the time of this prosecution, an enumerated offense that qualified for enhancement to a felony and that the state therefore failed to establish his guilt of the crime charged in the information. Carter challenges the sufficiency of the state's proof on the ground that the second conviction alleged in the criminal information was a conviction for violating a no-contact order issued pursuant to the provisions of § 12–29–4 and this was not an enumerated crime under the provisions of § 12–29–2. Thus, Carter contends, because the state was unable to establish two previous qualifying convictions, it failed to produce evidence on the essential elements of the felony offense, and the trial justice should have entered a judgment of acquittal.

The defendant also challenges the trial justice's denial of his "motion to exclude prior convictions." In a pretrial motion, Carter sought the exclusion of evidence of his prior domestic abuse convictions arguing that because they did not relate to dishonesty or falsehood evidence of his prior convictions would unduly prejudice the jury and detract the jurors from con-

---

**7.** The definition of "Domestic Violence" also included violations of protective orders issued pursuant to G.L.1956 § 15–5–19 (domestic re-lations restraining orders) and protective orders issued by the District Court pursuant to G.L.1956 § 8–8.1–3.

sidering the events of May 2, 2000. Carter proposed that in the event he was convicted, the prior convictions could be used for sentencing purposes but the evidence should not be imparted to the jury. On appeal, Carter characterizes this effort as an offer to stipulate to this evidence notwithstanding that his motion was aimed at excluding this evidence and not relieving the state from the burden of proving his past convictions beyond a reasonable doubt. The trial justice rejected defendant's unorthodox request but gave an appropriate limiting instruction to the jury.

Finally, defendant challenges the introduction of hearsay testimony by Callahan, who testified on direct examination that immediately after the highway incident with defendant, she contacted the Family Court supervisor to inform her of the incident and to explain why she was unable to drive to Providence for the scheduled visit. According to Callahan, the worker told her that it was imperative that she appear with her daughters for the visit, that Carter had just arrived and that he appeared flustered. It was this later statement, describing defendant as appearing flustered, that defendant contends was inadmissible hearsay and so prejudicial as to warrant a new trial.

After careful review of the record in this case, we are of the opinion that the trial justice erred in failing to reduce the charge to a misdemeanor. The defendant's motion for judgment of acquittal was an improper procedural device for challenging the validity of the felony charge. It should have been raised under Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure. Nevertheless, since the defect in the information affected the jurisdiction of the court and the failure of the information to charge the appropriate offense, it should be noticed by the Court "at any time during the pendency of the proceeding." *Id.* Because defendant's conviction for violating a no-contact order was not an enumerated offense in § 12–29–2, it could not be counted as a second conviction and used for purposes of enhancement to a felony. We are satisfied that the failure to prove two prior convictions for qualifying offenses, the offense now before us on appeal was chargeable as a misdemeanor and not a felony. Clearly, the Superior Court does not have original jurisdiction of misdemeanor crimes. *See State v. Sickles*, 470 A.2d 220 (R.I.1984) (G.L.1956 § 12–3–1 confers original jurisdiction of misdemeanor offenses in the District Court). Because of our holding that this offense was not chargeable as a felony, we need not reach the other issues raised in defendant's brief.[8]

Our review of the record demonstrates that at the time of Carter's arrest and prosecution, a conviction for violating a no-contact order, issued pursuant to § 12–29–4 of the Domestic Violence Prevention Act, was not a crime of domestic violence and could not serve to establish a felony, pursuant to § 12–29–5(c)(1) as "an offense

---

**8.** Based upon our decision herein, we do not address whether jurisdiction of a felony offense charged pursuant to the provisions of § 15–15–3 and § 12–29–5 is vested in the Superior Court pursuant to that Court's well established felony jurisdiction or, as argued by Carter, whether the language of § 15–15–3(f)(1), that vests jurisdiction for adult violations of chapter 15 of title 15, is controlling. We remain concerned about the inconsistencies in the Domestic Abuse Protection Act, chapter 15 of title 15, the Domestic Assault Act, G.L.1956 chapter 8.1 of title 8, and the Domestic Violence Prevention Act, title 29 of chapter 12. This statutory scheme, enacted by the General Assembly over a period of years, contains troubling jurisdictional inconsistencies and contradictions and reflects a patchwork approach to one of society's most serious ills. It warrants comprehensive revision.

punishable as a misdemeanor involving domestic violence as defined in § 12–29–2."[9] The defendant appropriately raised this issue at the close of the state's case and again at the close of the evidence. In arguing for acquittal, Carter contended that § 12–29–2 of the Domestic Violence Prevention Act defines domestic violence offenses, and that a violation of § 12–29–4 was not, at the time of this prosecution, an enumerated offense. Thus, defendant argues that the state failed to present a *prima facie* case.

The trial justice rejected this argument. He concluded that a crime of domestic violence as defined by § 12–29–2, includes, *"but is not limited to,"* the offenses set forth in the statute. He characterized a violation of a no-contact order as a crime of domestic violence that qualified under the catchall provision contained in the definitional section. The trial justice observed that "it may be helpful if the General Assembly would specifically include [a] violation of [a] no-contact order under 12–29–4 as one of the offenses enumerated in 12–29–2(1)." However, he was nonetheless satisfied that the broad definitional language rendered the list "illustrative but not exclusive[.]" Because the Legislature designated a violation of a no-contact order as a separate crime in the same Domestic Violence Prevention Act that provides for a felony prosecution, the trial justice concluded that "to hold that a violation of a no-contact order is not a domestic violence [misdemeanor] conviction for purposes of sentencing enhancement," renders meaningless the Legislature's declared purpose in § 12–29–1, "to assure victims of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." We respectfully disagree. This Court is

not in the business of supplying essential elements of a felony offense by implication. *See State v. Calise,* 478 A.2d 198, 201 (R.I.1984). In deciding this issue we are mindful that the Legislature complied with the trial justice's suggestion and, in July 2001, immediately after defendant's conviction, the General Assembly amended § 12–29–2 to include a violation of a no-contact order as an offense that counts towards the felony crime of domestic violence. *See* P.L.2001, ch. 259.

We recognize that the purpose underlying every protective order, whether issued by the Family Court pursuant to § 15–15–3, or by the District Court pursuant to § 8–8.1–3, or a no-contact order issued in accordance with § 12–29–4, is to protect the victim by prohibiting contact between the parties and to furnish an effective arrest and prosecution mechanism to restrain and punish offenders. Although the Domestic Violence Prevention Act is a salutary measure containing both remedial and prophylactic provisions, it is also a penal statute and it is those statutory terms with which we concern ourselves.

It is the function of this Court to examine a penal statute in a light different from remedial legislation. Certainly, to effectuate its salutary purpose a remedial statute should be liberally construed "in its broad and general sense." *State v. Simmons,* 114 R.I. 16, 18, 327 A.2d 843, 845 (1974) (quoting *McDonald v. Brown,* 23 R.I. 546, 549, 51 A. 213, 214 (1902)). However, when the statute under review is penal in nature, "the same language liberally construed in [remedial legislation] * * * must be read narrowly * * * and [the] defendant must be given the benefit of any reasonable doubt as to whether the act charged is within the meaning of the

---

**9.** Section 12–29–2 was subsequently amended to include violations of a no-contact order

issued pursuant to the provisions of § 12–29–4. *See* note 4, *ante.*

statute." *Id.* Under our well-established canons of statutory construction "penal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed." *Calise,* 478 A.2d at 200. Moreover, in deciding "whether [a] defendant's conduct is within the ambit of the statute," while according the defendant "the benefit of any reasonable doubt[,]" *State v. Dussault,* 121 R.I. 751, 753, 403 A.2d 244, 246 (1979), we are also constrained by the "constitutional requirement for certainty in penal statutes." *State v. Brown,* 97 R.I. 115, 119, 196 A.2d 133, 136 (1963). Thus, a penal statute "must contain a description or definition of the act or conduct which comprises the offense contemplated therein stated with legal certainty." *Id.* "Unfortunately, neither the trial justice nor this [C]ourt has any authority to supplement or to amend a statute enacted by the General Assembly." *State v. Bryant,* 670 A.2d 776, 779 (R.I.1996) (citing *Calise,* 478 A.2d at 201).

■ In the case before us, the criminal information alleged that defendant, "after having been previously convicted twice of a crime of domestic violence, to wit, 10/31/95 and 9/5/96, did violate a protective order issued by the Family Court * * * on the 5th day of January, 2000, in violation of § 15–15–3 and § 12–29–5 of the General Laws[.]" As noted, to qualify as a felony offense, a crime of domestic violence must be an offense enumerated in § 12–29–2. Although it is undisputed that a violation of a no-contact order was not included in this definition at the time of this prosecution, the state argues that the language "inclu[ding], but not limited to" is sufficient to bring a violation of a no-contact order into the purview of § 12–29–2. We cannot accept this argument. Because a conviction for a violation of a no-contact order was not an enumerated offense in § 12–29–2, we decline to supply it by im-

plication, particularly when, as here, it is used for purposes of sentencing enhancement. *See State v. Smith,* 766 A.2d 913, 924 (R.I.2001) (habitual offender statutes must be strictly construed in light of the policy of lenity, that is, when two constructions of a criminal statute are possible, the less harsh construction controls).

We are not aware of any authority that permits such a broad, catchall phrase to be employed in a penal statute to bring otherwise excluded conduct within the purview of the criminal law. The state points to this Court's holding in *Dussault,* 121 R.I. at 754, 403 A.2d at 246, to support its argument that when specific terms in a penal statute are "followed by a general catchall phrase, the general term is construed by reference to the specific terms." This case is of no assistance to the state. Raymond Dussault was accused of accosting women by impersonating a Cumberland police officer and was charged with a violation of G.L.1956 § 11–14–1, which provided that anyone who falsely portrayed himself as an enumerated state or town officer or official was guilty of a misdemeanor. Although the position of police officer was not a specifically enumerated office, the statute also included within its provisions, "or any other officer of any city or town in this state[.]" *Id.; see also Dussault,* 121 R.I. at 753, 403 A.2d at 246. This Court agreed with the trial justice that a police officer was "an officer of the town [of Cumberland]" and, therefore, was included in the statute. We construed the meaning of "any other officer" in light of the other state and municipal positions specifically set forth in the statute. *Dussault,* 121 R.I. at 756, 403 A.2d at 247. The statute we confronted in *Dussault* was specific and definite; it was limited to those enumerated positions and any other officer *of the town.* To fall within its provisions, the defendant must be charged with impersonating an officer of the town

and not any other person. According to the state's argument, if § 11–14–1 had, at the time, provided that it was unlawful to impersonate a list of town officials, with language including but not limited to these officials, then the list merely was illustrative and not definite. If Dussault had been accused of impersonating a member of the armed forces, under the state's argument, he could be prosecuted pursuant to that statute. We reject this argument. Because the statute in *Dussault* was limited to an officer of the town and did not include any officer of any description, it reasonably embraced Dussault's conduct. That is not the situation in the case before us.

We are of the opinion that a no-contact order and a domestic abuse restraining order, although intended to accomplish the same result, are not the same. Section 12–29–4, entitled "Restrictions upon and duties of court," contains a list of mandatory requirements that a judge or bail commissioner must meet when arraigning a person accused of a crime of domestic violence. Among those restrictions and requirements imposed on the state's judicial officers is the mandatory issuance of a no-contact order that must be in writing and given to the defendant before he or she is released. This order must include "the court's directive and shall bear the legend: 'Violation of this order is a criminal offense under this section and will subject a violator to arrest.'" Section 12–29–4(a)(3). The statute further requires the clerk of the court to "forward a copy of the order on or before the next judicial day to the appropriate law enforcement agency specified in the order." Consequently, these orders are issued *sua sponte*, without a complaint, affidavit, testimony or fact-finding and are *ex parte* obligations that are imposed on the judiciary. In contrast, orders issued pursuant to the state's domestic abuse and domestic as-

sault statutes require that the accused be afforded notice and an opportunity to defend. Because of the procedural protections provided to an accused facing a domestic abuse restraining order and the lack of due process protections in the context of a no-contact order, we are satisfied that the failure on the part of the General Assembly to include a violation of a no-contact order in the list of enumerated offenses was not an oversight, nor does the inclusion of catchall language in the definitional section persuade us otherwise. We conclude that the conviction for violation of a no-contact order was not an enumerated crime of domestic violence and could not be counted as a second conviction. Therefore, the charge should have been reduced to a misdemeanor and transferred to the District Court. At best, defendant committed a misdemeanor violation of § 15–15–3, an offense cognizable in the District Court.

Accordingly, because we sustain the defendant's appeal on this issue, we need not reach the other issues raised in this appeal.

### Conclusion

For the reasons stated, the defendant's appeal is sustained, and the judgment of conviction is vacated. The papers in this case may be remanded to the Superior Court with directions that the case be transferred to the District Court for further proceedings.

Justice FLAHERTY did not participate.