STATE

v.

Anthony F. DELBONIS.

No. 2003–511–C.A.

Supreme Court of Rhode Island.

Dec. 14, 2004.

Thomas Dickinson, Esq., for Plaintiff.

Aaron L. Weisman, Esq., for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on September 28, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The defendant, Anthony F. DelBonis (DelBonis or defendant), appeals from a Superior Court judgment of conviction for one count of driving under the influence of liquor or drugs (DUI) in violation of G.L. 1956 § 31-27-2, as amended by P.L.2000, ch. 264, § 1 (effective July 13, 2000). The defendant contends that the trial court erred when it denied his motion to dismiss for lack of subject-matter jurisdiction. For the reasons set forth herein, we vacate the judgment of the trial court.

## Facts and Procedural History

In this jury-waived trial,[1] the Superior Court justice found that on September 16, 2002, at about 1:40 a.m., two officers of the Rhode Island State Police, Trooper Lidski (Lidski) and Trooper Buonaito (Buonaito),[2] while traveling south on Route 10 in Cranston and entering Route 95 south, observed a vehicle operated by defendant pass the troopers' cruiser at a high rate of speed. According to Lidski, he activated the cruiser's radar and clocked the vehicle traveling at a speed of eighty-three miles per hour in a fifty-five-mile-per-hour zone. Both troopers saw the vehicle swaying, from lane to lane slowly, although the testimony also disclosed that the vehicle was not being driven in an erratic manner. The troopers directed defendant's vehicle to pull over and stop. Lidski approached the driver's side of defendant's vehicle and detected an odor of alcohol from inside the

---

1. The record discloses that defendant demanded a trial by jury in Superior Court in the first instance but subsequently waived his right to a trial by jury.

2. Although the trial justice discussed the testimony of a "Trooper Burns" in his bench decision, the content of Trooper Buonaito's testimony before the trial court confirms that the trial justice was referencing the testimony of Trooper Buonaito.

vehicle. When Lidski asked defendant whether he had been drinking, defendant admitted to having two drinks. Based upon the odor of alcohol and the troopers' observations of defendant's physical condition and behavior, the troopers asked that defendant submit to various field sobriety tests. The defendant consented and failed all three of the field sobriety tests. Trooper Buonaito testified that, based upon his observations, he believed that defendant was under the influence of alcohol beyond the legal limit and was in no condition to drive a motor vehicle safely. The troopers placed defendant under arrest. He subsequently refused to submit to a Breathalyzer examination.

The state filed a criminal complaint in District Court charging defendant with a misdemeanor violation of § 31–27–2. On October 11, 2002, in District Court, defendant moved to dismiss the complaint on state and federal due process grounds. The District Court judge denied the motion and, after trial, she found defendant guilty of a misdemeanor offense of driving under the influence of alcohol. DelBonis appealed his conviction to Superior Court and moved to dismiss the complaint for lack of subject-matter jurisdiction. The defendant argued that when the Legislature amended § 31–27–2 in 2000, it failed to include provisions, either by definition or by the penalties set forth in § 31–27–2(d), for offenses for which there was no evidence of blood alcohol concentration (BAC). As a result, defendant argued, these offenses must be considered civil violations subject to the jurisdiction of the Traffic Tribunal, pursuant to § 31–27–2(h). The trial justice disagreed, concluding that the Superior Court was vested with subject-matter jurisdiction and that defendant was properly before the court. On June 19, 2003, the trial justice found that the state had met its burden of proof beyond a reasonable doubt and declared defendant guilty of a misdemeanor violation of § 31–27–2.

## Issues Presented

The defendant contends that the Superior Court erred in its denial of his motion to dismiss for lack of subject-matter jurisdiction. The Rhode Island Supreme Court reviews "an attack on subject matter jurisdiction *de novo*." *Zarrella v. Minnesota Mutual Life Insurance Co.*, 824 A.2d 1249, 1256 (R.I.2003). This case also presents a question of statutory interpretation; "[t]his Court reviews issues of statutory interpretation *de novo*." *Machado v. State*, 839 A.2d 509, 512 (R.I.2003).

## Discussion

We reject defendant's contention that the Superior Court, absent evidence of defendant's BAC, lacked subject-matter jurisdiction over his alleged violation of § 31–27–2. The General Assembly is constitutionally vested with the power to prescribe the jurisdiction of the Superior Court, District Court, and Traffic Tribunal.[3] "The Superior Court is a court of general jurisdiction and may decide any controversy in which the state alleges the commission of * * * any crime unless jurisdiction is conferred upon some other tribunal." *State v. Souza*, 456 A.2d 775, 779 (R.I.1983). Pursuant to G.L.1956 § 8–2–15, the Superior Court "shall have origi-

---

**3.** Article 10, section 2, of the Rhode Island Constitution provides, in pertinent part:

"**Jurisdiction of [S]upreme and inferior courts—Quorum of [S]upreme [C]ourt.**—The [S]upreme [C]ourt shall have final revisory and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs, and shall also have such other jurisdiction as may, from time to time, be prescribed by law. * * * The inferior courts shall have such jurisdiction as may, from time to time, be prescribed by law."

nal jurisdiction of all crimes, offenses, and misdemeanors, except as otherwise provided by law." By its enactment of G.L.1956 § 12–3–1, the General Assembly has vested the District Court with original jurisdiction for offenses designated as misdemeanors.[4] *See State v. Sickles*, 470 A.2d 220, 220–21 (R.I.1984) (explaining that § 12–3–1 confers *original jurisdiction over misdemeanor crimes upon the District Court*). The District Court's original jurisdiction of misdemeanor offenses encompasses violations of § 31–27–2. At the time of this prosecution, § 31–27–2(h) provided in pertinent part as follows:

> **"Driving under influence of liquor or drugs.—**
>
> " * * *
>
> "(h) Jurisdiction for *civil* violations of this section shall be with the [T]raffic [T]ribunal. Jurisdiction for *misdemeanor* violations of this section shall be with the [D]istrict [C]ourt for persons eighteen (18) years of age or older and to the [F]amily [C]ourt for persons under the age of eighteen (18) years." (Emphases added.)

This Court previously has noted the "distinction between error, acting in excess of jurisdiction, and absence of jurisdiction in the fundamental sense." *Souza,* 456 A.2d at 779. When applied to a trial court of general jurisdiction, absence of subject-matter jurisdiction "is an extreme determination" that should only be made after careful consideration by this Court. *Id.* (citing *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

■ When confronting a question of statutory interpretation, " '[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.' " *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998).

The state filed a criminal complaint in District Court charging defendant with a misdemeanor violation of § 31–27–2.[5] Without question, the District Court was vested with original jurisdiction to decide the controversy and, in accordance with Rule 23 of the District Court Rules of Criminal Procedure, the Superior Court has jurisdiction over misdemeanor appeals from the District Court, which are heard *de novo.*[6]

---

4. General Laws 1956 § 12–3–1 directs:

 "**Offenses triable by [D]istrict [C]ourt.—** The [D]istrict [C]ourt shall have jurisdiction and cognizance of all crimes which are not expressly designated as felonies, offenses, misdemeanors, and violations including offenses against town or city ordinances, if no special court exists or is created by charter or law for that purpose, punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both, and of all other criminal matters which are or shall be declared specially to be within the jurisdiction of the court by the laws of the state, which shall legally be brought before the court, with power to try, render judgment, pass sentence, and award a warrant for execution of the sentence."

5. General Laws 1956 § 31–27–2(a), as amended by P.L.2000, ch. 264, § 1 provides:

 "**Driving under influence of liquor or drugs.—**(a) Whoever drives or otherwise operates any vehicle in the state while under the influence of any intoxicating liquor, drugs, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination of these, shall be guilty of a violation or a misdemeanor *as set forth in subdivision* (b)(3) * * * and shall be punished as provided in subsection (d) of this section."

6. Rule 23 of the District Court Rules of Criminal Procedure provides, in pertinent part:

 "**Trial by jury or by the court.—**A defendant who is charged with an offense which is punishable by imprisonment for a term of more than six (6) months shall be advised by the Court, at the time of the defendant's initial appearance, that the defendant has a right to trial by jury in the first instance, but in the

Subject-matter jurisdiction hinges on the allegations in the complaint, rather than what the state can prove at trial. A complaint that properly sets forth the crime charged is sufficient to invoke the jurisdiction of the District Court and provides adequate notice to defendant of the nature of the offense.[7]

The defendant argues that without "evidence of percentage of alcohol in a motorist's blood, there is simply no way to determine that the Superior Court has jurisdiction over the offense" because § 31–27–2 allocated jurisdiction between the Traffic Tribunal and the District Court based upon defendant's BAC. The defendant has confused the ultimate issue of subject-matter jurisdiction with whether the state can prove his guilt beyond a reasonable doubt. Although the Superior Court was vested with subject-matter jurisdiction to hear and decide the misdemeanor charge of DUI brought under the provisions of the 2000 amendment to § 31–27–2, the elements of that offense and how it may be proven present an entirely different question.

By its enactment of P.L.2000, ch. 264, § 1, the Legislature created two categories of DUI offenses: civil violations, if the offender's BAC is .08 percent or greater but less than .1 percent; and misdemeanor offenses, when his or her BAC is .1 percent or greater. In addition to explicitly setting forth the elements of a misdemeanor offense of DUI that is tied to an offender's BAC, the statute's penalty section was also significantly amended to provide for a penalty for a civil violation and a sentence for the several categories of misdemeanor crimes, each depending on the defendant's BAC and whether he or she is a first-time offender.

The version of § 31–27–2 now under consideration (P.L.2000, ch. 264, § 1) provided, in relevant part, as follows:

"**Driving under influence of liquor or drugs.**—(a) Whoever drives or otherwise operates any vehicle in the state while under the influence of any intoxicating liquor, drugs, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination of these, shall be guilty of a violation or a misdemeanor as set forth in subdivision (b)(3) of this section and shall be punished as provided in subsection (d) of this section.

"(b)(1) Any person charged under subsection (a) of this section whose blood alcohol concentration is eight one-hundredths of one percent (.08%) or more by weight as shown by a chemical analysis of a blood, breath, or urine sam-

---

event the defendant chooses to waive that right and to stand trial in the District Court without a jury and is found guilty the defendant is entitled to appeal that judgment to the Superior Court where the defendant will receive a trial de novo before a jury."
General Laws 1956 § 8–2–17 directs:
"**Jurisdiction of appeals, statutory proceedings, and probate matters.**—The [S]uperior [C]ourt shall have jurisdiction of such appeals and statutory proceedings as may be provided by law, and may exercise general probate jurisdiction in all cases brought before it on appeal from probate courts, or when such jurisdiction is properly involved in suits in equity."

7. Rule 6 of the District Court Rules of Criminal Procedure provides, in pertinent part:

"**The complaint.**—(a) *Nature and Contents.* The complaint shall be a plain, concise and definite written statement setting forth the offense charged. A complaint which provides the defendant and the court with adequate notice of the offense being charged shall be sufficient if the offense is charged either (1) by using the name given to the offense by the common law or by statute, or (2) by stating the definition of the offense in terms of either the common law or the statute defining the offense, or in terms of substantially the same meaning."

ple shall be guilty of violating subsection (a) of this section. This provision shall not preclude a conviction based on other admissible evidence. Proof of guilt under this section may also be based on evidence that the person charged was under the influence of intoxicating liquor, drugs, toluene, or any controlled substance defined in chapter 28 of title 21, or any combination of these, to a degree which rendered the person incapable of safely operating a vehicle. The fact that any person charged with violating this section is or has been legally entitled to use alcohol or a drug shall not constitute a defense against any charge of violating this section.

" \* \* \*

"(d)(1)(i) Every person found to have violated subdivision (b)(1) of this section for a first violation whose blood alcohol level is eight one-hundredths of one percent (.08%) but less than one-tenth of one percent (.1%) by weight may be subject to a fine of not less than one hundred dollars ($100) nor more than two hundred fifty dollars ($250) \* \* \*. Every person convicted of a first violation whose blood alcohol level is one-tenth of one percent (.1%) by weight or greater but less than fifteen hundredths of one percent (.15%) shall be subject to a fine of not less that one hundred ($100) dollars nor more than three hundred dollars ($300) \* \* \* and/or shall be imprisoned for up to one year. \* \* \* The person's driving license shall be suspended for a period of three (3) months to six (6) months.

(ii) Every person convicted of a first offense whose blood alcohol concentration is fifteen hundredths of one percent (.15%) or more shall be subject to a fine of five hundred dollars ($500) \* \* \* and/or shall be imprisoned for up to one year. \* \* \* The person's driving li-

cense shall be suspended for a period of three (3) months to six (6) months."

Thus, the 2000 amendment was a comprehensive revision of the state's DUI statute. Not only were the elements of the offense redefined and classified according to the driver's blood alcohol level, but also the penalty provisions were amended significantly and were explicitly linked to the operator's BAC. Every penalty provision set forth in the amendment was based on the operator's BAC, but there was no penalty provision for a DUI offense in which the driver was found to be intoxicated "to a degree which rendered the person incapable of safely operating a vehicle." Section 31–27–2(b)(1). We deem this omission determinative to the case before this Court.

The state bears the burden of proving each and every element necessary to the charge of driving under the influence of alcohol in violation of § 31–27–2 beyond a reasonable doubt. *See State v. Hazard,* 745 A.2d 748, 751 (R.I.2000) (every element necessary to constitute the crime charged must be proven beyond a reasonable doubt and the state cannot be relieved of this burden). We are satisfied that under the provisions of § 31–27–2, as it existed at the time of defendant's arrest and prosecution, an essential element of a misdemeanor DUI was that the defendant's BAC be .1 percent or greater. The absence of evidence of defendant's BAC, however, does not defeat the District Court's subject-matter jurisdiction over this offense because the state alleged the commission of a misdemeanor violation of § 31–27–2 in a legally sufficient complaint. We are equally satisfied that the state may attempt to prove that element with evidence other than a defendant's BAC. Section 31–27–2(b)(1) provided that a conviction may be "based on other admissible evidence." As in any criminal prosecution,

whether the state can sustain its burden of proof depends on the quantum of evidence and its probative value.

As noted, the statute provided that proof of guilt may be based on evidence that defendant was "under the influence of intoxicating liquor[ or] drugs * * * to a degree which rendered the person incapable of safely operating a vehicle." Section 31–27–2(b)(1). The state argues and the trial justice found that this language created a non-breathalyzer offense that consists of "operating under the influence of intoxicating liquor to a degree which rendered the person incapable of safely operating a vehicle" for which the sanctions set forth for offenses with proof of defendant's BAC apply. We respectfully disagree.

Under our well-established canons of statutory construction, in passing on an enactment of the Legislature, this Court is obligated to ascertain the legislative intent of the statute. *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987). One of the first and elementary rules of statutory construction dictates that we distinguish between remedial legislation and a penal statute. "It is the function of this Court to examine a penal statute in a light different from remedial legislation." *State v. Carter*, 827 A.2d 636, 643 (R.I.2003). The defendant must "be given the benefit of any reasonable doubt as to whether the act charged is within the meaning of [a penal] statute." *State v. Amaro*, 448 A.2d 1257, 1259 (R.I.1982). In *Amaro*, the defendant was charged with operating a motor vehicle to endanger, in violation of § 31–27–1, resulting in the death of an unborn fetus. *Amaro*, 448 A.2d at 1258. This Court vacated his conviction and held that § 31–27–1 was a penal statute that must be narrowly construed and that an unborn fetus was not a "person" within the meaning of § 31–27–1. *Amaro*, 448 A.2d at 1259–60.

In *Carter*, 827 A.2d at 637, the defendant, after having twice been convicted of a crime of domestic violence, was convicted of violating a domestic abuse protective order, a felony, because of the two previous convictions. The Rhode Island Supreme Court vacated the conviction because the defendant's second offense, violating a District Court no-contact order, was not an enumerated crime qualifying as a second offense, pursuant to the provisions of G.L.1956 § 12–29–2, and therefore, the offense on appeal did not rise to the level of a felony. *Carter*, 827 A.2d at 644. We held that the provisions of the Domestic Violence Prevention Act were penal in nature and used for purposes of sentencing enhancement, and, when two constructions of a criminal statute are possible, the rule of lenity dictates that the less harsh construction controls. *Id.* (citing *State v. Smith*, 766 A.2d 913, 924 (R.I.2001)).

Although it is appropriate to construe a remedial statute in its "broad and general sense," when considering a statute that is penal in nature, the identical language must be read narrowly and the "defendant must be given the benefit of any reasonable doubt as to whether the act charged is within the meaning of the statute." *Carter*, 827 A.2d at 643–44 (quoting *State v. Simmons*, 114 R.I. 16, 18, 327 A.2d 843, 845 (1974)). We undertake every analysis of a criminal statute "constrained by the 'constitutional requirement for certainty in penal statutes.'" *Id.* at 644 (quoting *State v. Brown*, 97 R.I. 115, 119, 196 A.2d 133, 136 (1963)).

The trial justice recognized that the only penalties set forth in § 31–27–2 related to an operator's BAC. He proceeded to declare this deficiency a matter of "clear legislative oversight" that must be corrected by the trial court. In doing so, the trial

justice relied upon a principle announced in *Capobianco v. United Wire & Supply Corp.*, 77 R.I. 474, 482, 77 A.2d 534, 538 (1950), a workers' compensation case, in which the Court supplemented "an unintended gap in the statutory provision" of remedial legislation. As discussed, this doctrine is inapplicable to penal statutes where its application may implicate one's personal liberties. The trial justice also referred to a case relied upon by the state, in which the Colorado Supreme Court was faced with the fifty-five-mile-per-hour speed limit enacted in response to a policy of the federal government's denying federal highway aid to any state with "a maximum speed limit on any public highway within its jurisdiction in excess of fifty-five miles per hour." *Olinyk v. People*, 642 P.2d 490, 492 n.1 (Colo.1982) (quoting 23 U.S.C. § 154(a)(1)). However, in a subsequent amendment, the legislature failed to include a penalty for violators who exceed the speed limit by more that nineteen-miles-per-hour. *Id.* at 491–92.

In *Olinyk*, 642 P.2d at 492, the Colorado Supreme Court was confronted with a statute that declared that " 'all fifty-five-mile speed limits shall be considered maximum lawful speed limits and *not prima facie speed limits*.' " (Emphasis added.) The defendants argued that because the fifty-five-mile-per-hour speed limit was classified as a maximum speed limit and not a *prima facie* limit, "it [was] not clear which, if any, of the penalties [set forth in the statute were] applicable." *Id.* at 493. The Colorado Supreme Court disagreed and declared that the legislature clearly intended to enact an enforceable fifty-five-mile-per-hour speed limit to prevent the forfeiture of federal highway funds. *Id.* at 495. The court looked to the original enactment that contained a schedule of fines, including a "catch-all" penalty and held that this previously repealed section could

serve as the penalty provision. *Id.* at 494–95.

▮ Our research has disclosed that *Olinyk* is a holding unique to the State of Colorado. The gap-filling approach adopted by the court in *Olinyk* does not represent the majority position, and no decision of this Court has ever employed that approach in a criminal case. *See State v. Simmons*, 114 R.I. 16, 18, 327 A.2d 843, 845 (1974) (language that may be liberally construed in a remedial statute must be narrowly read when the statute is penal in nature). "Where a statute fails to provide a penalty it has been uniformly held that it is beyond the power of the court to prescribe a penalty." *State v. Fair Lawn Service Center, Inc.*, 20 N.J. 468, 120 A.2d 233, 236 (1956) (citing *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948)). "It has been long recognized that criminal statutes must provide for a penalty and a conviction for violation of a statute containing no penalty cannot stand." *People v. Graf*, 93 Ill.App.2d 43, 235 N.E.2d 886, 889 (1968) (citing *State v. Tessier*, 100 R.I. 210, 213 A.2d 699 (1965)).

In *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948), a case in which the United States Supreme Court was confronted with a violation of the Immigration Act of 1917, the statute at issue provided for two different crimes for the act of harboring illegal aliens but included a penalty only for landing or bringing in an unauthorized alien and not for harboring an alien. The Court refused to apply ordinary rules of statutory construction and it concluded that it could not "mak[e] certain [that which Congress] has left undefined or too vague for reasonable assurance of its meaning." *Evans*, 333 U.S. at 486, 68 S.Ct. 634. We agree with this reasoning and are satisfied that the trial justice erroneously relied on *Olinyk* and *Capobianco* for the proposition that this Court is

obliged "to fill in [the] gap" in penal statutes "so that the purposes of the act may be effectively carried out." *Capobianco,* 77 R.I. at 482, 77 A.2d at 538.

Moreover, because § 31–27–2 distinguished between a civil violation and a misdemeanor offense based on an offender's BAC, were we to declare that § 31–27–2(b)(1) also provided for an offense defined as operating a motor vehicle while intoxicated "to a degree which rendered the person incapable of safely operating a vehicle," we would be faced with a dilemma about whether the offense was a civil violation or a misdemeanor. Certainly, we previously have recognized that, under a prior enactment, a driver could be found guilty of violating § 31–27–2 even if his or her BAC was below .1 percent and the misdemeanor penalty would apply. *DiCicco,* 707 A.2d at 256. Under the statute in place at the time of this prosecution, a driver whose BAC was below .1 percent cannot, as a matter of law, be guilty of a misdemeanor DUI. It is this very type of uncertainty in a penal statute that gives rise to the well-settled rule against engaging in judicial decisions that amend an act of the Legislature.

It is not the function of the trial court or this Court to construe a penal statute to create a criminal penalty in a statute that specifically has been amended by the General Assembly—particularly where, as here, an entirely different penalty scheme has been set forth. *See Carter,* 827 A.2d at 644; *State v. Bryant,* 670 A.2d 776, 779 (R.I.1996). No authority exists for this Court or the trial court in a criminal case "to supplement or to amend a statute enacted by the General Assembly." *Carter,* 827 A.2d at 644 (quoting *Bryant,* 670 A.2d at 779); *see State v. Calise,* 478 A.2d 198,

201 (R.I.1984) (this Court has neither the authority nor the competence to rewrite a penal statute to conform to the state's concept of how it should have been written).

"[The] fundamental principle that every criminal statute must contain a penalty is one of the foundations of our criminal law and is a development from the deep-seated resentment of the Star Chamber method of trial." *Fair Lawn Service Center, Inc.,* 120 A.2d at 236 (citing Roscoe Pound, *Spirit of the Common Law,* 49, 50 (1963)). It is basic hornbook law "that every criminal statute must provide for a penalty and that a conviction for a violation of a statute containing none cannot stand." *Tessier,* 100 R.I. at 211, 213 A.2d at 699. Having concluded that § 31–27–2 did not contain an applicable penalty, the trial justice should not have attempted to correct what he characterized as "a legislative oversight" by redrafting the statute.

The 2000 amendment classified two types of DUI offenses, civil violations and misdemeanor crimes, and contained a comprehensive penalty provision, expressly related to an operator's BAC, including stiffer penalties for anyone whose BAC is .15 percent or more.[8] Certainly, the Legislature could have incorporated the previous misdemeanor penalty scheme that was not linked to an operator's BAC. It did not do so; instead, it created an entirely different penalty provision wholly dependent upon the BAC of the offender.

 This Court recognized that under the statute in effect in 1998 an operator could be convicted of a misdemeanor DUI even if his or her BAC was below .1 percent. *DiCicco,* 707 A.2d at 256–57. The Legislature is "presumed to know the

---

**8.** Section 31–27–2(d)(1)(ii) provides for a more severe penalty for an offender whose BAC is .15 percent or more.

state of existing law when it enacts or amends a statute." *Simeone v. Charron,* 762 A.2d 442, 446 (R.I.2000) (quoting *Providence Journal Co. v. Rodgers,* 711 A.2d 1131, 1134 (R.I.1998)). By specifically decriminalizing DUI offenses in which the BAC is .08 percent or greater, but less than .1 percent, the General Assembly eliminated the possibility that anyone could be guilty of a misdemeanor DUI if his or her BAC was less than .1 percent, in direct negation of our holding in *DiCicco.*

Presumably, in amending § 31–27–2 to provide for a civil violation for .08 percent, the Legislature intended to reduce the incidence of drunk driving in the state by providing for civil prosecutions for operators whose BAC was .08 percent or greater, but less than .1 percent. It is not for this Court to decide whether § 31–27–2 served to accomplish this result, and it is not our function to opine on the wisdom of the enactment. Fortunately, and seemingly in recognition of this deficiency, § 31–27–2 was amended in 2003. Pursuant to P.L.2003, ch. 88, § 1, § 31–27–2, driving under the influence of liquor or drugs, is now classified as a misdemeanor and the threshold amount for *prima facie* proof of a DUI offense is a BAC of .08 percent.

Accordingly, to convict a defendant of a misdemeanor DUI under § 31–27–2 as it then existed, the state must prove beyond a reasonable doubt that defendant's BAC was at least .1 percent. The state may seek to establish the defendant's guilt by other admissible evidence, including circumstantial evidence supporting an inference of intoxication of .1 percent or greater or through the use of expert testimony. As long as the totality of the evidence constitutes proof of guilt beyond a reasonable doubt, the state may rely on evidence other than direct evidence of a defendant's BAC. *State v. Simpson,* 611 A.2d 1390, 1394 (R.I.1992).

In *State v. Lussier,* 511 A.2d 958 (R.I. 1986), this Court recognized the validity of the Breathalyzer test to prove drunk-driving offenses pursuant to § 31–27–2, as amended by P.L.1983, ch. 227, § 1, which eliminated statutory presumptions of intoxication based on an operator's BAC. In *Lussier,* 511 A.2d at 960, this Court held that the 1983 amendment, *inter alia,* removed "the necessity of providing an expert at each trial to testify about the effect of that percentage of alcohol upon the defendant's ability to drive." Further, we noted that:

> "[T]ypically vision impairment begins at 0.03–0.08 percent blood alcohol and becomes significant in all subjects at 0.10 percent [.1%]; reaction-time impairment begins at 0.04 percent; judgment of distance, dimensions and speed at 0.08 percent; coordination and memory at 0.10 percent [.1%]." *Id.*

In *State v. Lusi,* 625 A.2d 1350, 1355 (R.I.1993), we acknowledged the state's right to rely primarily on Breathalyzer results to prove defendants guilty of DUI and that a permissible inference may be drawn that at the time of operation the defendant was in violation of § 31–27–2. However, we also recognized that expert testimony may be necessary if the Breathalyzer test is not administered within a reasonable period. *Id.* at 1357. "Certainly a police officer's observations of a defendant's conduct at the scene and at the police station would qualify as such supplemental evidence." *Id.* Additionally, expert opinion testimony based on a defendant's behavior as witnessed by the police or other fact witnesses is certainly admissible and competent proof that the state may offer in attempting to prove a defendant's guilt beyond a reasonable doubt. As we noted in *Lusi,* because the statute "allows 'other admissible evidence,' we shall not attempt any further comprehensive defini-

tions of specific types of evidence that may qualify under the statute." *Id.* Obviously, the quantum of proof, by expert testimony or otherwise, must establish defendant's guilt beyond a reasonable doubt.

With respect to the case before this Court, however, we vacate the conviction and remand with instructions to enter a judgment of acquittal. As we announced in *Carter,* "[u]nder our well-established canons of statutory construction 'penal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed.'" *Carter,* 827 A.2d at 644 (quoting *Calise,* 478 A.2d at 200). The trial justice declared defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor "to a degree which rendered the person incapable of safely operating a vehicle" and sentenced defendant as if he was operating with a BAC of .1 percent or greater.

Significantly, the defendant objected to the imposition of sanctions that attach to BAC levels and argued that, because the trial justice had found the defendant guilty of a misdemeanor, he should not sentence the defendant in accordance with § 31–27–2(d)(1)(i). The trial justice rejected this argument and imposed the sanctions for what he characterized as "a non-breathalyzer conviction" in accordance with § 31–27–2(d)(1)(i). In *Tessier,* this Court declared that "law, without punishment for its violation, is in the nature of things impossible." *Tessier,* 100 R.I. at 211, 213 A.2d at 699 (quoting Joel Prentiss Bishop, *Bishop on Criminal Law,* § 6 at 3 (9th ed.1923)). It is the obligation of the trial court and the duty of this Court to dismiss a criminal complaint based on a statute that does not contain a penalty provision. *Id.* at 211, 213 A.2d at 700. We do so today.

### Conclusion

For the reasons state herein, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court with directions to enter a judgment of acquittal.