Justice Robinson, concurring in part and dissenting in part.
I concur in the several holdings set forth in the majority opinion, and I also concur in the reasoning underlying those holdings-except that I respectfully but quite vigorously dissent from the majority's decision to vacate the convictions on Counts Four and Six, and I disassociate myself from the majority's reasoning in that regard. While I appreciate the thoughtfulness with which the majority has reached its conclusion that the statute at issue in this case[1] contains a "flaw that cannot be repaired without the addition of language that criminalizes the conduct described in the statute," I simply cannot agree that such additional language is necessary for the purpose of giving fair notice as to what conduct is prohibited and as to what criminal penalties may be imposed on a person who engages in such conduct. In my judgment, a reading of the statute in its entirety makes it clear precisely what conduct is being criminalized and what would be the penalty for committing the crime. I candidly acknowledge that there is an obvious incompleteness about the statute; undoubtedly, the drafter had planned to add a phrase after the rather notorious "hanging or."[2] However, that negligence on the drafter's part does not alter the fact that it is clear and unambiguous from a perusal of the statute as a whole precisely what acts constitute sex trafficking of a minor and what the range of penalties for engaging in those acts is.
In my approach to the important question of statutory interpretation that this case poses, I have been guided by the following insightful and eloquent summary of certain basic principles:
"Our paramount task in construing a statute is to ascertain the intent behind *345 its enactment and to effectuate that intent whenever it is lawful and within the competence of the Legislature. * * * In order to ascertain the legislative intent, we examine the language, nature, and object of the statute. * * * In the construing of a statute, it is also permissible to consider the reasonableness of the result of a particular interpretation." Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co. , 466 A.2d 1153, 1156 (R.I. 1983).[3]
I begin the substantive portion of this partial dissent by stating that I fully agree with the majority's clearly stated view that the statute in question is unambiguous.[4] Where I part company with the majority is with respect to its further holding that something essential is absent from the otherwise unambiguous statute-namely, explicit language in the statute to the effect that it is criminal conduct for one to engage in one or more of the described acts.[5] We have said, time and time again, that it is entirely legitimate to look to the context in which particular language occurs. In my judgment, it is important to take a step back in order to consider the overall context. See, e.g. , Mendes v. Factor , 41 A.3d 994, 1002 (R.I. 2012) ("The plain meaning approach, however, is not the equivalent of myopic literalism, and it is entirely proper for us to look to the sense and meaning fairly deducible from the context.") (internal quotation marks omitted); see generally Davis v. Michigan Department of Treasury , 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). And such an approach requires us to "consider the entire statute as a whole * * *." Sorenson v. Colibri Corp. , 650 A.2d 125, 128 (R.I. 1994) ; see also Generation Realty, LLC v. Catanzaro , 21 A.3d 253, 259 (R.I. 2011) ; In re Brown , 903 A.2d 147, 149 (R.I. 2006).
The overall context of the statute in question is that it was part and parcel of the code of criminal conduct; described a number of prohibited acts; and provided a range of punishments for one who committed one or more of those acts. It would, of course, have been even better if those acts were explicitly declared in so many words to be criminal. In my judgment, however, *346 it is a totally fair and unavoidable inference from this unambiguous statute, when read in its entirety, that the described conduct was legislatively deemed to be criminal. See Ryan v. City of Providence , 11 A.3d 68, 71 (R.I. 2011) ("When we determine the true import of statutory language, it is entirely proper for us to look to the sense and meaning fairly deducible from the context.") (internal quotation marks omitted). No logical legislative purpose would be served by explicitly setting forth a series of penalties to be imposed if the conduct were not criminal. I frankly do not see how the statute can be understood otherwise. Fair notice has been given.
The statute's title ("Sex trafficking of a minor") clearly and unambiguously denotes what is the focus and subject matter of the text of the statute.[6] The statute goes on, in subsection (a), to provide definitions of important terms. Then, in subsection (b), the statute makes it eminently clear in the following words what conduct is the focus of the statute:
"Any person who:
"(1) Recruits, employs, entices, solicits, isolates, harbors, transports, provides, persuades, obtains, or maintains, or so attempts, any minor for the purposes of commercial sex acts ; or
"(2) Sells or purchases a minor for the purposes of commercial sex acts ; or
"(3) Benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in subdivision (1) or (2); or[.]" G.L. 1956 § 11-67-6(b) (emphasis added).
Despite the fact that nothing follows the final "or" in subsection (b), subsection (c) makes it clear what the penalty is for engaging in the conduct listed in subsection (b)-namely, "[e]very person who shall commit sex trafficking of a minor shall be guilty of a felony and subject to not more than fifty (50) years imprisonment or a fine of up to forty thousand dollars ($40,000), or both."
In my judgment, subsection (d), while also not a model of meticulous drafting, clearly goes on to provide a different penalty for anyone who "[o]bstructs, or attempts to obstruct, or in any way interferes with or prevents the enforcement of this section * * *."
While intending no disrespect to the members of the majority, it is my impression that they have scrutinized § 11-67-6 as a law school professor of statutory draftsmanship in quest of perfection would scrutinize a statute rather than viewing that statute to be a sufficiently clear declaration of: (1) what conduct is prohibited; and (2) what may be the penal consequences for violating one or more of those prohibitions. While the statute at issue would have been better if it had specifically added language to the effect that engaging in such conduct was criminal, I do not believe that such additional language was necessary ; the presence of criminal penalties in the same statute where particular activities of a sexual nature are itemized more than suffices to give the reasonable person fair notice that the referenced conduct is criminal in nature. It is my view that a common sense reading of § 11-67-6 *347 gives fair notice of what is prohibited and what will be the consequences of violating that prohibition. See Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire , 637 A.2d 1047, 1050 (R.I. 1994) ("[O]ur primary task in construing a statute is to attribute to the enactment the meaning most consistent with its policies and with the obvious purposes of the Legislature * * *."); see generally United States v. Hutcheson , 312 U.S. 219, 235, 61 S.Ct. 463, 85 L.Ed. 788 (1941) (referencing "the importance of giving 'hospitable scope' to Congressional purpose even when meticulous words are lacking").
The statute at issue does not involve the same sort of legislative omission that required us to reverse the conviction in the case of State v. DelBonis , 862 A.2d 760 (R.I. 2004). Unlike the situation in the DelBonis case, it is not necessary in the instant case "to supplement or to amend" the statute in order to dispel possible doubt as to what is prohibited and what the penalties are. DelBonis , 862 A.2d at 768 (internal quotation marks omitted). The four corners of the statute at issue in the present case, for all its lack of absolute perfection in terms of draftsmanship, suffice to give fair and adequate notice.
A venerable and sagacious proverb declares: "The best is the enemy of the good."[7] I believe that that proverb applies to the situation now before us. Certainly, it would have been "best" if there had been no imperfections in the statute; but that does not mean that what is explicitly stated in the statute is not "good" in the sense of not being sufficient to give fair notice of what acts are prohibited and what the penalties for violation will be.
I conclude by recalling the following pertinent observation of Justice Holmes: "We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean." Roschen v. Ward , 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929).[8]
For these reasons, I would affirm the convictions on Counts Four and Six, and I respectfully dissent from that portion of the majority opinion that reaches a contrary conclusion.

The statute at issue is G.L. 1956 § 11-67-6, and it is quoted in full in the majority opinion. The majority perceives a fatal "flaw" in that statute, which is the basis for the majority's conclusion that the convictions on Counts Four and Six must be vacated.

This is by no means the first time that the courts have been confronted with an imperfectly drafted statute. See, e.g. , Town of East Greenwich v. O'Neil , 617 A.2d 104, 108 (R.I. 1992) ("Legislative enactments are not always models of style and drafting.").

See also Alessi v. Bowen Court Condominium , 44 A.3d 736, 740 (R.I. 2012) ("In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.") (internal quotation marks omitted); Berthiaume v. School Committee of City of Woonsocket , 121 R.I. 243, 247, 397 A.2d 889, 892 (1979) ("Our construction of statutory language is guided by the proposition that the intent of the Legislature controls. That intent is discovered from an examination of the language, nature, and object of the statute.").

The majority opinion is pellucidly clear as to its assessment of the unambiguous nature of the statute at issue: "Here * * * there is no ambiguity, no language that is susceptible of more than one reasonable meaning, no language to construe." I do not quarrel in the least with that characterization of the statute; however, I do take issue with the majority's position that further language (explicitly stating that the conduct at issue is criminal) is necessary rather than merely desirable.

The majority opinion focuses on what it describes as "[t]he gap after the 'hanging or' in § 11-67-6(b)," and it characterizes that gap as being "a statutory flaw that cannot be repaired without the addition of language that criminalizes the conduct described in the statute * * *." It is the thesis of this dissent that, while it surely would have been desirable to add such language so that the statute would contain every jot and tittle which perfect draftsmanship would call for, no such addition was necessary for the statute to suffice to give fair notice as to what conduct was proscribed and what the penalty would be for engaging in that conduct.

I am aware of the "general proposition of statutory construction" to the effect that "titles do not control the meaning of statutes." Orthopedic Specialists, Inc. v. Great Atlantic & Pacific Tea Co. , 120 R.I. 378, 383-84, 388 A.2d 352, 355 (1978). However, I make reference to the title in this instance not to give meaning to the unambiguous statutory language, but simply as further confirmation of the focus of the enactment.

According to an authoritative source, the quoted language was originally an Italian proverb that was quoted in Italian by Voltaire in a letter that he wrote to the Duc de Richelieu on June 18, 1744. The Yale Book of Quotations 791 (Fred R. Shapiro ed., 2006).

See also Peak v. United States , 353 U.S. 43, 46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957) ("That seems to us to be the common sense of the matter; and common sense often makes good law.").