PASQUALINA CAPOBIANCO *vs.* UNITED WIRE & SUPPLY CORP.

DECEMBER 22, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an employee's claim of appeal to the superior court from an agreement approved by the director

of labor pursuant to §1 of article III of the workmen's compensation act, general laws 1938, chapter 300. The claim of appeal alleged that the agreement was procured by fraud, coercion, or mutual mistake of fact. The superior court dismissed the appeal because it was not claimed within the time limited by §4 of article III. From the decree dismissing the appeal, the employee, hereinafter called the appellant, has appealed to this court.

This appeal, as briefed and argued here, raises the question whether §4 which governs an appeal from a *decision* or *order* of the director of labor also governs an appeal from an *agreement* approved by the director of labor under the provisions of §1. There is, however, a more basic question to be considered. Is the special appeal authorized by §1 necessarily predicated upon a determination by the director of labor of the allegations of fraud, coercion, or mutual mistake of fact before there can be any basis for an appeal to the superior court?

The facts of the case are uncontradicted. There is no question that the appellant did not claim her appeal within the time prescribed by §4, if such time began to run from the date of the *approval* of the agreement as is urged by the appellee. The agreement was approved on December 21, 1945. Appellant received compensation at the rate of $20 a week from June 16 to November 8, 1945 when she returned to work. Thereafter on November 19 and 21, 1945 respectively she signed a final settlement receipt and the agreement in question here. On April 18, 1949 she filed her claim of appeal in the office of the director of labor. On the next day, April 19, 1949, without hearing the matter, the director certified such claim of appeal together with all other papers in the case to the superior court.

Appellee contends that the appeal should have been claimed within ten days from notice of the approval of the agreement, and since it was not so claimed it came too late to give the superior court jurisdiction to review the

agreement on the grounds alleged. In support of such contention it relies upon the express language of §4, as amended, which provides among other things as follows: "Any person aggrieved by any decision or order of the director of labor may appeal therefrom to the superior court by filing in the office of the director of labor, within 10 days of the notice of entry of any such decision or order, a claim of appeal * * *." It further contends that although the *agreement* was not a decision or order the director's *approval* of it was an "order" within the meaning of that term as used in §4.

Appellant contends that §4 does not apply in the case of an agreement but only in a case where the director has entered a decision or order deciding a matter concerning which the parties were in disagreement. She assumes that there is no statutory procedure limiting the time for taking an appeal under §1. On such assumption she argues that the general principles of equity are to be applied in determining whether her appeal is barred because of the lapse of time which has occurred since she discovered the alleged fraud, coercion, or mutual mistake of fact. And in any event, she argues, the director's approval of the agreement is neither a decision nor an order and therefore her claim of appeal is not governed by §4.

There is merit in the distinction which appellant makes between §1 and §4 and it is important to keep this in mind in determining the question before us. Section 1 plainly deals with a situation where an agreement has been reached between the parties and has been approved by the director of labor. In such a case that section provides: "No appeal shall lie from the agreement thus approved unless upon allegation that such agreement has been procured by fraud or coercion * * *." A proviso to this section was added by public laws 1949, chap. 2272, providing for a review of such agreement where by reason of accident, mistake, or unforeseen cause the agreement fails to correctly describe the employee's injuries.

Where the agreement is disapproved there is no appeal and either the employer or employee may thereafter file a petition for compensation in the office of the director of labor. Apparently the legislature first intended that jurisdiction over agreements should be confined to that office except in a case where it was alleged that an approved agreement had been procured by fraud or coercion, and later also in cases arising under the proviso. In such exceptional cases the director's jurisdiction is not final. The act, however, does not say he has no jurisdiction to pass upon the allegations of fraud or coercion. It merely grants appellate jurisdiction to the superior court, but it does not expressly state from what action by the director an appeal lies.

In the absence of a special provision governing such an appeal, we think that §4 would apply provided the action taken by the director of labor furnished a basis for an appeal. Upon consideration, however, we are of the opinion that he has taken no such action in the case at bar because the approval of an agreement cannot be construed to be an "order" within the meaning of that word in its context in §4. We think that it is more like the word "decision" with which it is coupled in such section and connotes the *adjudication* of a *disagreement* between the parties rather than a mere acquiescence by the director in their agreement. Therefore §4 does not apply to the instant appeal. In order for it to apply there must first be a decision or order consequent upon the adjudication by the director of labor of a controversy between the parties. Until then the right of appeal referred to in §1 and relied upon by the appellant cannot become operative.

On this view the following question logically arises. From what action of the director did the legislature intend that this special appeal could be taken to the superior court? Our answer is that it is from his determination whether or not fraud or coercion had been exercised in the procurement of the agreement. Unless in the first instance there was such a determination possible within the office

of the director of labor there would be nothing by which either party to the agreement could claim to be aggrieved so as to support a claim of appeal. Obviously it could not be the approval of the agreement because that was the very thing both parties had sought in order to make their agreement binding and effective. The alleged grievance of the appellant here for example is not that the agreement was approved but that it was procured by fraud, coercion, or mutual mistake of fact. The legislature intended that, upon the complaint of the party aggrieved, an agreement should not stand if the allegation of fraud, coercion, or mistake of fact was found to be true. More than that it specially provided that ultimately such allegation might be judicially determined on appeal to the superior court. See *Airedale Worsted Mills, Inc.* v. *Cote,* 75 R. I. 361.

In the instant case the parties and the director taking the statute literally have assumed that such an appeal would lie without any hearing and determination by the director of labor of the allegation of fraud, coercion, or mutual mistake of fact. He merely certified the claim of appeal forthwith to the superior court for determination by that court originally. This was a mistaken assumption. Out of it has arisen the present question of when a claim of appeal must be filed in such a case. When that assumption is brushed aside the difficulty immediately dissolves.

Had the statute expressly provided that there should be a hearing in the office of the director of labor on such allegation the parties of course would have proceeded to a determination by the director and there would have been no difficulty in applying §4 limiting the time for appeal from his decision to the superior court. But the lack of an express provision to such effect does not necessarily preclude a hearing in the first instance by the director. On the contrary we are of the opinion that such procedure is implicit in the provisions of §1. The very word "appeal" in the law of procedure presupposes an original proceeding from the result of which the party claiming to be aggrieved

appeals to a higher tribunal. Since the alleged grievance of the appellant could not reasonably be the director's *approval* of the agreement it could only be her dissatisfaction with his determination of the allegation of fraud or coercion if he had heard it. Hence before claiming an appeal she should have filed in the office of the director of labor a petition in the nature of a petition for review, setting out therein specific facts as in a bill in equity from which it could be found whether fraud or coercion had been perpetrated or mutual mistake of fact had occurred in the procurement of the agreement. *Grant* v. *Wilcox,* 50 R. I. 84. If aggrieved by the director's decision she could claim an appeal therefrom to the superior court in accordance with the provisions of §4.

We are confirmed in the above view by the history of the procedural provisions of our workmen's compensation act. Originally agreements were filed in the office of the clerk of the superior court and were subject to approval or disapproval by that court. P. L. 1912, chap. 831, art. III, section 1. In 1921 such original jurisdiction over agreements was transferred to the commissioner of labor, now the director of labor. P. L. 1921, chap. 2095. Thus if the superior court prior to that amendment in 1921 had the authority to hear and determine in the first instance allegations of fraud or coercion in the procurement of an agreement it is reasonable to conclude that such authority also was transferred to the commissioner, now the director.

There can be no question that originally the superior court had such authority. It would be clearly unreasonable to suppose the contrary. The superior court as the general trial court and the court of exclusive original jurisdiction in equity was, in the absence of a contrary statutory provision, the appropriate tribunal to hear and determine such a question. If the statute had required the superior court to certify it to the supreme court, this court would have been thereby placed in the anomalous position of being compelled to hear and determine in the first instance

a question of fact, and this notwithstanding that under the express provision of the workmen's compensation act such power is within the exclusive province of the superior court. Art. III, §6. Manifestly the legislature did not so intend. Although it did not express its intention in so many words we are nevertheless of the opinion that it intended that the superior court should first hear and determine allegations of fraud or coercion in the procurement of an agreement, specially reserving, however, to the party aggrieved thereby a right of appeal to this court.

It may be worthy of note in this connection that P. L. 1949, chap. 2272, which as hereinbefore stated amends art. III, §1, and adds further grounds of appeal including accident, mistake, unforeseen cause, *etc.*, expressly provides for the filing in the office of the director of labor of a petition setting out the additional facts upon which the right to a review of the agreement for the above-mentioned causes rests, and for the determination of such petition in the first instance by the director of labor. While it might be argued that, since §1 prior to that amendment contained no provision of that nature, the legislature did not intend the director to have the power to hear and determine cases in which fraud or coercion was alleged as the procuring cause of the agreement, we are, nevertheless, of the opinion that such an argument would be unsound especially in view of the history of the procedure as hereinbefore outlined.

It would seem that we have here a classic instance of a legislative oversight which has resulted in an unintended gap in the statutory provision prescribing the procedure necessary to be followed in order to obtain a *decision* from which an appeal in its true sense could be taken to the superior court within the time limited by §4. This being so it is not only the right but the duty of this court to fill in such gap so that the purposes of the act may be effectively carried out and so that appellate procedure thereunder may be made clear and definite. Only legislative direction to

the contrary could bar judicial action in the premises. We are restrained by no legislative direction of that nature. ·

In the instant case we cannot agree with the appellant that the superior court erred in dismissing her appeal. While we do not approve the reason for such ruling we are nevertheless of the opinion that there was not a true appeal under §1 before that court and therefore its decree of dismissal was not erroneous. However, since this is a case of first impression involving a matter of procedure not definitely expressed in the statute, we think the decree should be amended so that the appellant will not be prejudiced thereby in the event that she has recourse hereafter to the procedure which we have prescribed above as appropriate. Conformity to such procedure will necessarily result in a "decision or order" of the director of labor to which the provisions of §4 can be applied in the event an appeal to the superior court is claimed.

The petitioner's appeal is denied and dismissed without prejudice, and the cause is remanded to the superior court with direction to amend the decree accordingly.

*Goldberg & Goldberg, Philip B. Goldberg, Leo M. Goldberg, Joseph Palmieri,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondent.