March 19, 2026

**Supreme Court**

No. 2024-134-M.P.
(A.A. 22-213)

(Dissent begins on Page 22)

Robert Schmidt et al.          :

v.          :

Rhode Island Division of Taxation.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Robert Schmidt et al.          :

v.                             :

Rhode Island Division of Taxation.     :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  This case comes before the Court on a writ of certiorari. The petitioner, the Rhode Island Division of Taxation (the division), seeks review of a final judgment entered by the District Court in favor of the respondents, Robert and Mary Schmidt (collectively, the taxpayers).  The sole issue is one of statutory interpretation—namely, whether the three-year refund period prescribed in G.L. 1956 § 44-30-87(a), which limits the amount that a taxpayer can recover for an overpayment of income taxes, refers to the three years following a taxpayer's filing of a tax return or the three years prior to a taxpayer's claim for a refund.

At the administrative level, both the division and the tax administrator denied the taxpayers' claim for a refund or credit for overpayment, finding they were

- 1 -

ineligible to recover any amount under the terms of the statute. The taxpayers appealed to the District Court, where a hearing judge resolved the dispute on cross-motions for summary judgment, finding in favor of the taxpayers. Before this Court, the division argues that the hearing judge improperly construed the statute, effectively rewriting its terms and distorting its plain and ordinary meaning. For the reasons set forth herein, we quash the judgment of the District Court.

## I

## Facts and Travel

The underlying facts of this case are undisputed. On or about July 14, 2020,[1] the taxpayers filed a joint 2017 Rhode Island personal income tax return, claiming an overpayment of $5,672.93 in the 2017 tax year.[2] The division processed the return on August 6, 2020, and on November 23, 2020, the division sent the taxpayers a notice denying their request for a refund or credit, stating that under the applicable statute, § 44-30-87, their claim "was not filed within the allowable time period,

---

[1] In her decision, the hearing officer noted that "[t]he [t]axpayers filed their 2017 Rhode Island return on July 14, 2020." In their papers, the taxpayers also assert that their return was filed on July 14, 2020; however, in a footnote, they cite the date on their tax form as July 15, 2020. The division states in its brief that the return was filed on July 15, 2020, and the signature line of the form itself bears the date July 15, 2020. This discrepancy is not pertinent to the issue before this Court.

[2] The taxpayers' initial 2017 return claimed an overpayment of $3,449 in withholding based solely on one of the taxpayers, Mary Schmidt's, wages. However, $2,223.93 of wage withholding from Robert Schmidt was unintentionally omitted from the first filing. The District Court found that the division consented to the change in the amount claimed.

- 2 -

and/or no amount of tax was paid within the allowable time period * * *." Exercising their statutory right for further review under § 44-30-89, the taxpayers requested an administrative hearing. A hearing was held on August 31, 2022, and in a written decision dated September 14, 2022, the hearing officer concluded that the taxpayers were not entitled to their claimed refund for the 2017 tax year. The hearing officer recommended that the division had properly denied the taxpayers' claim, and thereafter the tax administrator adopted the decision and recommendation of the hearing officer.

In her decision, the hearing officer addressed the two time periods set forth in § 44-30-87(a) in which a taxpayer may claim a refund or credit for overpayment. The hearing officer determined that, to qualify for a refund under the two-year period, a taxpayer must file a claim within two years from the time the tax was paid. The time that a tax is deemed paid is also delineated by statute. Pursuant to § 44-30-87(i):

> "[A]ny income tax withheld from the taxpayer during any calendar year and any amount paid as estimated income tax for a taxable year is deemed to have been paid by the taxpayer on the fifteenth day of the fourth month following the close of his or her taxable year with respect to which the amount constitutes credit or payment."

The hearing officer found that the taxpayers' 2017 tax was deemed paid on its due date, April 17, 2018.[3] To be eligible for a refund under the three-year period, she noted that the taxpayer must file a claim within three years of the filing of a tax return. She further found that the taxpayers filed their 2017 tax return on July 14, 2020.

The hearing officer noted that the taxpayers were outside of the two-year period; however, they were within the three-year period to claim a refund. Nevertheless, she determined that they were not eligible to recover a refund because the statute specifically limits the amount of a refund for taxpayers filing a claim in the three-year period to the portion of the tax paid "within the three (3) year period," and the taxpayers paid no tax from July 14, 2020, to the time of the decision.

On October 17, 2022, the taxpayers filed an appeal in the District Court challenging the hearing officer's decision. Soon after, the division filed a motion to dismiss. The taxpayers, who heretofore had represented themselves, retained counsel; and, after both parties conferenced with the court, the hearing judge entered an order denying the division's motion to dismiss. Shortly thereafter, the parties submitted the case for a decision on cross-motions for summary judgment.

---

[3] The hearing officer noted that the due date for 2017 personal tax returns was April 17, 2018, rather than April 15, "because of the weekend and Emancipation Day in Washington D.C."

The hearing judge began his analysis by indicating that some portions of the tax code are clear. For instance, he pointed to the language of § 44-30-87(a) explaining the limit placed on a refund or credit claimed within two years from the time the tax was paid, noting that the refund "shall not exceed the portion of the tax paid within the two (2) years immediately preceding the filing of the claim." The hearing judge stated that this "type of precise language" is not included in the portion of the statute limiting refunds under the three-year period, as the language simply states that the limit placed on a "credit or refund shall not exceed the portion of the tax paid within the three (3) year period." He described the reason why the "three-year period" was not written with more linguistic precision as "a matter of conjecture," which he attributed to "likely just an oversight."

The hearing judge further found that the court could not look to the section's prior reference to the three-year time period, defined as within the three years "from the time the return was filed," because that reference involved an indefinite time period, and this would seem "to allow a taxpayer to wait an unlimited time before filing a return." The hearing judge determined that the statute was ambiguous, and he ultimately concluded that the only reasonable interpretation was to say that "the limit imposed by the statute under the three year part of this section refers to taxes paid during the three years immediately preceding the refund request."

The hearing judge rested his decision on two statutory canons of construction. First, he stated that "the court must discern the objective of this part of the tax law." To this end, he concluded that the statute "must be interpreted in a way that is consistent with the goal of furnishing taxpayers with a procedure for securing a tax credit or refund, and placing a cap on the amount of the award." Second, he noted that the court will not interpret a statute in a manner that would lead to an unreasonable or absurd result. In addressing this, he cited the taxpayers' contention that in more than fifty years of enforcement "there has *NEVER* been a successful claim for a credit or refund under the three-year provision of § 44-30-87(a)." Accordingly, the hearing judge found that the division erred in denying the taxpayers' claim by reading the three-year period limiting the amount of recovery to the three years after the filing of their tax return.

Judgment entered in favor of the taxpayers on April 25, 2024, and the hearing judge remanded the case to the Division of Taxation for further proceedings consistent with the statutory interpretation set forth in his decision. The division filed a petition for writ of certiorari on May 16, 2024, which this Court granted.

## II

### Standard of Review

"The General Assembly has directed that each appeal of a final decision of the tax administrator shall be an original, independent proceeding in the nature of a

- 6 -

suit in equity to set aside such final decision and shall be tried de novo and without a jury in the District Court." *Apex Oil Company, Inc. v. State by and through Division of Taxation*, 297 A.3d 96, 107 (R.I. 2023) (quoting *Dart Industries, Inc. v. Clark*, 696 A.2d 306, 309 (R.I. 1997)). "A party aggrieved by a final judgment of the District Court in a tax proceeding may petition this Court for a writ of certiorari to review any questions of law involved." *Id.* (quoting *Dart Industries, Inc.*, 696 A.2d at 309).

"It is well settled that this Court's review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed." *Barnes v. Hodys*, 307 A.3d 173, 179-80 (R.I. 2024) (quoting *State ex rel. Coventry Police Department v. Charlwood*, 224 A.3d 467, 469-70 (R.I. 2020)). "Although this Court affords the factual findings of an administrative agency great deference, questions of law—including statutory interpretation—are reviewed *de novo*." *Verizon New England Inc. v. Savage*, 337 A.3d 689, 693 (R.I. 2025) (quoting *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I. 2008)). Moreover, "[t]his Court reviews *de novo* a hearing justice's decision granting summary judgment." *Roman v. City of Providence*, 333 A.3d 74, 79 (R.I. 2025) (quoting *Bronhard v. Thayer Street District Management Authority*, 326 A.3d 178, 183 (R.I. 2024)).

# III

## Discussion

We begin our analysis with an overview of the statute in question. In its entirety, § 44-30-87(a) states:

> "**General.** Claim for credit or refund of an overpayment of tax shall be filed by the taxpayer within three (3) years from the time the return was filed or two (2) years from the time the tax was paid, whichever of these periods expires the later, or if no return was filed by the taxpayer, within two (2) years from the time the tax was paid. If the claim is filed within the three (3) year period, the amount of the credit or refund shall not exceed the portion of the tax paid within the three (3) year period. If the claim is not filed within the three (3) year period, but is filed within the two (2) year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the two (2) years immediately preceding the filing of the claim. Except as otherwise provided in this section, if no claim is filed, the amount of a credit or refund shall not exceed the amount which would be allowable if a claim has been filed on the date the credit or refund is allowed."

It is clear that the Legislature intended for two separate time periods during which a claim for a credit or refund for overpayment of tax is permitted. *See* § 44-30-87(a). The statute provides that the taxpayer shall file a claim within three years from the time the return was filed, or, two years from the time that the tax was paid. *Id.* Immediately following the designation of these two time periods, the statute sets forth a limit on the amount of credit or refund that a taxpayer can recover for each

- 8 -

period. *Id.* It is with respect to the meaning of this provision that the present dispute lies.

Under the statute, if the claim is filed within the two-year period, i.e., the time from when the tax is deemed paid, then "the amount of the credit or refund shall not exceed the portion of the tax paid during the two (2) years immediately preceding the filing of the claim." Section 44-30-87(a). If the claim is filed within the three-year period, the time from when the return is filed, "the amount of the credit or refund shall not exceed the portion of the tax paid *within the three (3) year period.*" *Id.* (emphasis added). The precise point of contention is the meaning given to the latter insertion of the phrase—"within the three (3) year period."

Before this Court, the division argues that the statute plainly mandates that, if a claim for a credit or refund is filed within three years from the time the return was filed, the taxpayer cannot recover any amount exceeding the portion of the tax paid within the three years from the time the return was filed. The division submits that the three-year period in question—the three years that serve as the timeframe capping a taxpayer's refund amount—holds the same meaning as the first sentence: three years "from the time a return was filed." It points to the distinction in wording from the two-year period, where the statute explicitly designates the timeframe that caps a taxpayer's refund amount as the two years "immediately preceding the filing of the claim." The division contends that "[i]f the General Assembly wanted the (3)

three years to be counted backwards from the filing of the claim, the plain language would have read 'immediately preceding the three (3) year period,' instead of '*within the three (3) year period.*'" (Emphasis in original.)

Conversely, the taxpayers submit that the natural reading of the statute says something different entirely. In fact, they argue that the three-year period capping a taxpayer's refund amount "runs backward from the date of the refund claim[,] not forward from the return filing date." They contend that the ordinary meaning of the word "within" is inside, and it is not synonymous with "from," which signifies a starting point moving forward. In the taxpayers' view, this reading of the statute is grammatically sound, avoids rendering any of the language meaningless, and gives full effect to its structure.

It is the well settled practice of this Court that "[w]hen a statute is clear and unambiguous we are bound to ascribe the plain and ordinary meaning of the words of the statute and our inquiry is at an end." *Unistrut Corporation v. State Department of Labor and Training*, 922 A.2d 93, 98 (R.I. 2007). When examining an unambiguous statute, "there is no room for statutory construction and we must apply the statute as written." *Miller v. Saunders*, 80 A.3d 44, 50 (R.I. 2013) (quoting *Morel v. Napolitano*, 64 A.3d 1176, 1179 (R.I. 2013)). The plain meaning approach, however, "is not the equivalent of myopic literalism, and it is entirely proper for us to look to the sense and meaning fairly deducible from the context." *State v. Davis*,

295 A.3d 65, 67 (R.I. 2023) (quoting *State v. Wray*, 101 A.3d 884, 886-87 (R.I. 2014)).

"Therefore we must consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." *5750 Post Road Medical Offices, LLC v. East Greenwich Fire District*, 138 A.3d 163, 167 (R.I. 2016) (quoting *Western Reserve Life Insurance Co. of Ohio v. ADM Associates, LLC*, 116 A.3d 794, 798 (R.I. 2015)). "It is generally presumed that the General Assembly intended every word of a statute to have a useful purpose and to have some force and effect." *Id.* (deletion omitted) (quoting *Peloquin v. Haven Health Center of Greenville, LLC*, 61 A.3d 419, 425 (R.I. 2013)). "However, under no circumstances will this Court construe a statute to reach an absurd result." *Id.* (quoting *ADM Associates, LLC*, 116 A.3d at 798).

It is our opinion that the statute is devoid of any ambiguity that would require this Court to conduct a review beyond the plain meaning of the words. "When interpreting a statute, our ultimate goal is to give effect to the General Assembly's intent. * * * The best evidence of such intent can be found in the plain language used in the statute. Thus, a clear and unambiguous statute will be literally construed." *Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I. 2003). As written, the plain language of the statute makes a clear distinction between the two- and

three-year periods in which a taxpayer may claim a credit or refund for overpayment. The cap on the amount of a refund within the three-year period is designated as "the portion of the tax paid within the three (3) year period." Section 44-30-87(a). Explicitly different, the cap on a refund within the two-year period is designated as "the portion of the tax paid during the two (2) years immediately preceding the filing of the claim." *Id.*

It is clear to us that the disputed phrase "within the three (3) year period" is meant to be read in conjunction with the three-year period set forth previously, that being three years from when the tax return was filed. Further, we are of the opinion that it would be contradictory to accept the taxpayers' urged interpretation of "within the three (3) year period" only with regard to the contested phrase, while maintaining that the phrase, when used several times elsewhere in the statute, means something else. To read the exact same phrase as having separate meanings would render the statute internally inconsistent, and seemingly defeat the purpose of using separate and distinct language to denote a different time period when intended, as is done in reference to the two-year period. "When the Legislature has spoken clearly, this Court will not infer a contrary result." *ADM Associates, LLC*, 116 A.3d at 802 (quoting *Pierce v. Pierce*, 770 A.2d 867, 872 (R.I. 2001)). To hold that the Legislature's intended meaning of the phrase "within the three (3) year period" is

synonymous not with its usage elsewhere in the section, but instead with the phrase "immediately preceding the filing of the claim," would do just that.

The taxpayers also argue that the division's interpretation of the statute leads to an absurd result. The taxpayers contend that the division's interpretation "creates absurd results by excluding taxpayers who timely prepay taxes through withholding or estimated payments, from the benefit of the full (3) year refund provision." Further, they claim that the division's interpretation renders the statute "internally inconsistent by allowing a two (2) year lookback for claims filed under the two- (2) year rule (explicitly tied to the filing of the claim), while applying a far narrower rule to the three (3) year provision by tying it instead to the taxes paid after the filing of the tax return." The taxpayers add that their position is further buttressed by the fact that the statute explicitly provides that a claim may be filed in whichever of these periods expires later.

In arguing that its reading of the statute is not absurd, the division contends that a forward-looking view of the three-year limit "allow[s] the State to account for repayments through its budgetary process upon receipt of the return." Further, the division takes issue with the taxpayers' argument, and the District Court's assertion, that there could never be a successful claim for a refund sought within the three-year timeframe because the overpayment must have been made prior to the filing of the return. The division proffers two scenarios, one literal and one seemingly

hypothetical, to refute this conclusion. First, the division points to an administrative order where taxpayers filed their 2010 tax return in December 2011 with a tax payment and late penalty. In August 2013, they filed an amended 2010 return and requested a refund. In that instance, the division found that they were entitled to a partial refund under the three-year timeframe for the tax they paid during the three-year period of December 2011 to December 2014. Another viable scenario, the division claims, is where a taxpayer is issued an assessment for additional tax due after the return is filed. If the return is amended, it contends that a potential refund would fall within the three-year period after the return is filed.

The taxpayers' argument is rooted in the notion that the cap periods must be identical and consistent; however, this argument ignores several other apparent distinctions set forth in the statute. The statutory language creates two separate time periods for refunds, two years and three years. *See* § 44-30-87(a). The statute further designates two different points of significance from which the clock on a taxpayer's ability to claim a refund starts: the time the tax was deemed paid and the time the tax return was filed. *See id.* While it may be viewed as incongruous to set one of the timeframes for capping refund amounts as *preceding* the filing of a claim (backward looking) and the other as *following* the filing of a tax return (forward looking), in considering both the division's tendered scenarios permitting a refund under the

- 14 -

three-year period as well as the several other express differences between the two periods set forth in the statute, we cannot say that it is absurd.

Next, the division argues that the District Court violated the separation-of-powers doctrine by "filling" an alleged gap in the statutory language, thereby assuming a function of the Legislature. The division contends that the omission of the phrase "immediately preceding" in reference to the three-year period was intended by the Legislature and there was no gap to be filled in the language. The taxpayers argue, however, that the District Court's reading of "within the three (3) year period" as looking backward from the time the claim was filed "appropriately interprets" as opposed to altering the text of the statute. The taxpayers aver that, while a court is bound by the chosen words of the Legislature, where the language is unclear or presents a gap, the court has "both the authority and the responsibility to construe the law in a way that cures legislative defects and effectuates its evident purpose." When read together with the two-year timeframe cap, the taxpayers submit, the District Court's interpretation of the statute was sound.

As the taxpayers point out, this Court has remarked that "[a] court need not lie supine in the face of legislative silence or ambiguity." *Kaya v. Partington*, 681 A.2d 256, 262 (R.I. 1996). In fact, the taxpayers cite to two cases, *Kaya* and *Capobianco v. United Wire & Supply Corp.*, 77 R.I. 474, 77 A.2d 534 (1950), in which they assert that we "interpret[ed] a statute to fill in missing elements necessary

- 15 -

to effectuate its intent." While the principle expounded in these cases is sound, it has no application to the case at bar.

In *Kaya*, this Court read an exclusivity provision into G.L. 1956 § 45-19-1, a statute establishing injured-on-duty (IOD) benefits for police officers who suffered work-related injuries or illnesses. *Kaya*, 681 A.2d at 260. In that case, an injured police officer who already recovered IOD benefits sought to bring an action in tort against the City of Providence and his supervising officers. *Id.* at 258. The Court compared § 45-19-1 to a like statute, the Workers' Compensation Act (WCA), noting that the statutes had noticeable similarities and were ultimately intended to achieve similar goals. *Id.* at 261. However, unlike § 45-19-1, the WCA explicitly contained an exclusivity provision, barring an injured employee from exercising common-law rights against their employer or its employees. *Id.* at 259. In attempting to harmonize these statutes, the Court determined that it would create a result not intended by the Legislature if officers could sue their employers in addition to receiving benefits under § 45-19-1, and, thus, held that § 45-19-1 was "the exclusive remedy for police officers injured in the line of duty with *respect to their employers*." *Id.* at 260-61.

In *Capobianco*, this Court similarly read a provision into the then-existing WCA to remedy an "unintended gap in the statutory provision * * *." *Capobianco*, 77 R.I. at 482, 77 A.2d at 538. There, the relevant statute provided an appeal to the

- 16 -

Superior Court for an agreement approved by the director of labor later alleged to be procured by fraud, coercion, or mutual mistake of fact. *Id.* at 477, 77 A.2d at 535. While the statutory language did not expressly provide that the director make a determination of whether fraud or coercion had occurred prior to an appeal to the Superior Court, the Court determined that "[u]nless in the first instance there was such a determination possible within the office of the director of labor there would be nothing by which either party to the agreement could claim to be aggrieved so as to support a claim of appeal." *Id.* at 479-80, 77 A.2d at 537. The Court found that such a procedure was implicit in the word appeal, for it "presupposes an original proceeding from the result of which the party claiming to be aggrieved appeals to a higher tribunal." *Id.* at 480-81, 77 A.2d at 537.

In both *Kaya* and *Capobianco*, this Court was confronted with legislative silence that created an unintended gap in the statute, permitting this Court to read in provisions in order to effectuate the intent of the Legislature. In our view, there is neither silence nor ambiguity in the present case that would justify a like result. Instead, the taxpayers ask us to *change* the wording of the statute, to essentially delete the written words and insert a phrase with an entirely different meaning in order to remedy what they have characterized as legislative oversight. This result is squarely outside of the province of this Court. *See Shine v. Moreau*, 119 A.3d 1, 10 (R.I. 2015) (noting that we "simply apply the plain meaning of the statute; it is not

- 17 -

within our power to read language into a statute which the General Assembly chose not to put there"); *see also State v. Oliveira*, 882 A.2d 1097, 1117 (R.I. 2005) ("Unfortunately, neither the trial justice nor this court has any authority to supplement or to amend a statute enacted by the General Assembly." (quoting *State v. Bryant*, 670 A.2d 776, 779 (R.I. 1996))); *Sindelar v. Leguia*, 750 A.2d 967, 972 (R.I. 2000) (stating that this Court's "assigned task is simply to interpret the Act, not to redraft it").

As this Court has previously observed,

> "[W]hen legislative silence is confronted, the temptation is omnipresent for judges to label any interpretation of that silence that embodies policies with which they disagree as absurd or creating a result not intended by the Legislature, thereby freeing the court to intrude its own preferred policies into the law under the euphemistic banner of filling in a legislative gap or interstitial lawmaking." *Heritage Healthcare Services, Inc. v. Marques*, 14 A.3d 932, 938 n.13 (R.I. 2011) (quoting *Kaya*, 681 A.2d at 267-68).

Had the General Assembly intended for the three-year cap period to be backward looking, it surely would have included the phrase "immediately preceding the filing of the claim," as it explicitly did in reference to the two-year cap period. We decline to read the lack of such inclusion as legislative silence.

Further, the division submits that it has consistently applied the statute in accordance with its view for the last fifty years and that "the long-standing application of the statute by the Tax Division coupled with the lack of action by the

- 18 -

General Assembly" is compelling evidence of conformity with legislative intent. The taxpayers assert that this Court is not bound to defer to an administrative agency's interpretation of a statute when it is unreasonable or contrary to law, which they wholeheartedly contend is the division's interpretation here. While we maintain that the statute is not ambiguous, we also observe that "it is a well-recognized principle that a longstanding, practical and plausible interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the Legislature should be accepted as evidence that such a construction conforms to the legislative intent." *Verizon New England Inc.*, 337 A.3d at 695 (quoting *Trice v. City of Cranston*, 110 R.I. 724, 730, 297 A.2d 649, 652 (1972)).

Lastly, the taxpayers point us to a different section in the tax code to support their reading of the statute. They argue that under § 44-30-6, the language of § 44-30-87(a) must be read in conformity with federal tax law. Section 44-30-6 states:

> "Any term used in the Rhode Island personal income tax law shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required. Any reference to the laws of the United States means the provisions of the Internal Revenue Code of 1954, and amendments thereto, and other provisions of the laws of the United States relating to federal income taxes for the same taxable year, except that if this reference should ever be declared

- 19 -

unconstitutional then to the provisions that existed on January 1, 1972."

The taxpayers contend that "[t]his statutory directive reflects the Legislature's intent to harmonize state income tax administration with the federal framework, promoting consistency and predictability for taxpayers." The comparable federal income tax law that the taxpayers reference also creates a two- and three-year period to file a refund claim for overpayment of taxes. *See* 26 U.S.C. § 6511(a). Further, the federal law includes the language "immediately preceding the filing of the claim" in reference to the three-year period. Section 6511(b)(2)(A). The taxpayers argue that because of the "materially identical language" between the statutes, and without a clear legislative indication to the contrary, the Rhode Island and federal laws must be read consistently under § 44-30-6.

In response, the division contends that there is a clear difference between the two statutes, the omission of the language in the state statute and its inclusion in the federal law. The division argues that there is "no term" in the Rhode Island law that the division is interpreting differently from the federal one. Rather, the division asserts, there is a phrase that is wholly missing, and as such, a different meaning is clearly required.

The taxpayers' reliance on § 44-30-6 is misguided. As previously mentioned, the section states that *any term used* shall have the same meaning in the federal context. *See* § 44-30-6. However, as we have maintained throughout this opinion,

§ 44-30-87(a) does not contain an ambiguous term. To read "within the three (3) year period" as meaning "immediately preceding the filing of the claim" is to simply erase and insert a new phrase, and with it, an entirely different meaning into the statute. Thus, § 44-30-6 lends no support to the taxpayers' argument.

We are cognizant of the fact that there are valid policy concerns underlying the taxpayers' interpretation of this statute; however, we maintain that the reasoning behind the General Assembly's choice of language is its own, and it "is not the function of this Court to act as a super legislative body and rewrite or amend statutes already enacted by the General Assembly." *Powers v. Warwick Public Schools*, 204 A.3d 1078, 1088 (R.I. 2019) (quoting *Willis v. Omar*, 954 A.2d 126, 132 (R.I. 2008)); *see State v. LeFebvre*, 198 A.3d 521, 527 (R.I. 2019) ("'How to effectuate policy—the adaption of means to legitimately sought ends—is one of the most intractable of legislative problems.' * * * It is not for this Court to determine whether a statute enacted by the General Assembly 'comports with our own ideas of justice, expediency or sound public policy.'") (brackets omitted) (first quoting *Oliveira*, 882 A.2d at 1117, then quoting *State v. Distefano*, 764 A.2d 1156, 1160 (R.I. 2000)). Rather, we must simply apply the law as written. In doing so, this Court is bound

by the Legislature's choice to omit the phrase "immediately preceding the filing of the claim" in reference to the three-year cap period.[4]

Accordingly, although we appreciate the hearing judge's careful analysis, we cannot agree that the language in § 44-30-87(a) is ambiguous. The temporal limitation of the phrase "within the three (3) year period" clearly refers to the antecedent phrase "within three (3) years from the time the return was filed." We hold that the hearing judge erred in finding in favor of the taxpayers' motion for summary judgment.

# IV

## Conclusion

For the foregoing reasons, we quash the judgment of the District Court. The record shall be returned to the District Court with our decision endorsed thereon.

**Justice Robinson, dissenting.** I dissent. I do so respectfully, but also with no small degree of astonishment that I am alone in concluding that G.L. 1956

---

[4] For the reasons discussed in this opinion, this Court is constrained to give effect to the enactments of the General Assembly. However, insofar as policy or practicality may favor a differing result, we urge the General Assembly, as the body properly vested with such power, to revisit this language. *See State v. Duggan*, 15 R.I. 403, 409, 6 A. 787, 788 (1886) ("The remedy for a harsh law is not in interpretation, but in amendment or repeal.").

§ 44-30-87(a) unambiguously entitles the taxpayers in this case to receive either a credit or a refund for the amount that they overpaid.

It is clear to me that, by filing on or about July 14, 2020 their claim relative to an overpayment of $5,672.93 in the 2017 tax year, the taxpayers thereby complied with the requirement in § 44-30-87(a) that a "[c]laim for credit or refund of an overpayment of tax shall be filed within three (3) years from the time the return was filed * * *." I frankly do not understand why this case is before us. I see no ambiguity in § 44-30-87(a) to the extent that it relates to the instant taxpayers.

The majority opinion correctly states that "[t]he underlying facts of this case are undisputed." It then goes on to correctly summarize as follows the dates that are at the nub of the issue concerning which we disagree: "On or about July 14, 2020, the taxpayers filed a joint 2017 Rhode Island personal income tax return, claiming an overpayment of $5,672.93 in the 2017 tax year." (Footnotes omitted.) I next turn to the legal issue that this case requires us to resolve—namely, whether the Division of Taxation (the Division) should look to the three years prior to the filing of the return or the three years that follow that filing when it is the Division's responsibility to calculate that amount of overpayment to be credited or refunded to the taxpayer(s).

In my judgment, the first two sentences of § 44-30-87(a) are dispositive of the issue presented by this case. Those sentences read as follows:

> "Claim for credit or refund of an overpayment of tax shall be filed by the taxpayer within three (3) years from the

- 23 -

time the return was filed or two (2) years from the time the tax was paid * * *. If the claim is filed within the three (3) year period, the amount of the credit or refund shall not exceed the portion of the tax paid within the three (3) year period." Section 44-30-87(a).[1]

It having been established that the taxpayers' claim was timely filed in accordance with the clear language of § 44-30-87(a), all that remains is to pinpoint the three-year period of time within which overpayments were made that should qualify for a credit or refund to the taxpayers. In other words, the real question before this Court is how should the Division calculate the amount to be credited or refunded to the taxpayers. Should it look backwards to the three-year period before the timely filing of the claim or should it look forward to the time year period after that filing?

To my mind, the first two sentences of the statute unambiguously answer that question. The key word in the quoted portion of the statute is "within." To me, that simple English word indicates that any timely claim for credit or refund of an overpayment triggers the rather ministerial process of calculating the amount of said credit or refund by examining the amounts paid *within* the three-year period prior to that timely filing of the claim.

---

[1]     The entirety of G.L. 1956 § 44-30-87(a) is printed at the beginning of Part III ("Discussion") of the majority opinion.

- 24 -

It is noteworthy that one of the definitions of the word "within" in the most recent edition of The American Heritage Dictionary reads as follows: "Used to indicate a range to be covered or an amount necessary *before something can happen*." The American Heritage Dictionary of the English Language 1990 (5th ed. 2011) (emphasis added).

Assuming, as I do, that that definition contained in a highly respected dictionary of recent vintage is accurate, the use of the word "within" in the quoted language from § 44-30-87(a) means that the taxpayers were granted three years to file their claim *before* "something can happen"—*viz.*, their claim would not be honored. For that reason, it is clear to me that the calculation of the overpayment must involve scrutinizing what occurred in the three-year period before the filing of the claim for credit or refund.

In my view, the majority errs in construing the statute as directing that the Division should look in a forward direction—i.e., looking at the three-year period *after* the filing of the claim. Completely apart from the clear meaning of the word "within" in the statute, it strikes me that it is illogical to conclude that the General Assembly instructed the Division to look forward to the three-year period in which taxes had not yet been paid rather than to look back to the three-year period preceding the claim as to which the exact amount of the overpayment would be easily ascertainable. In that regard, it is significant that the first sentence of

§ 44-30-87(a) uses the word "overpayment." To me that word clearly indicates that a *payment* has been made, but it is a payment that is *over* what was due. Both logic and the clear statutory language dictate that the Division's attention should be directed to the previous three-year period in which the overpayment occurred.

While I believe that the language from the statute that I have quoted is crystal clear and should be dispositive, it is also my view that, even if I were to concede *arguendo* that the statute is ambiguous, the taxpayers should still prevail. That should be the result because, viewed in its entirety, the overall purpose[2] of this statutory provision is unquestionably remedial. And it is a basic principle that remedial statutes are to be liberally construed. *See, e.g.*, *Ricci v. Rhode Island Commerce Corporation*, 276 A.3d 903, 906 (R.I. 2022) ("[I]t is important to be

---

[2]    *See, e.g.*, *Ryan v. City of Providence*, 11 A.3d 68, 70-71 (R.I. 2011) ("When we construe a statute or ordinance, our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.") (internal quotation marks omitted); *Such v. State*, 950 A.2d 1150, 1155-56 (R.I. 2008) ("When construing statutes, this Court's role is to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.") (internal quotation marks omitted); *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I. 2001) ("In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature."); *Narragansett Electric Co. v. Harsch*, 117 R.I. 395, 402, 368 A.2d 1194, 1199 (1977) (stating that, when confronted with a statute that "is not entirely clear," the Court's duty is to attempt "to ascertain the legislative intention from a consideration of the legislation in its entirety, viewing the language used therein in the light, nature, and purpose of the enactment thereof"); *see also State v. Hazard*, 68 A.3d 479, 485 (R.I. 2013); *Alessi v. Bowen Court Condominium*, 44 A.3d 736, 740 (R.I. 2012); *DeMarco v. Travelers Insurance Company*, 26 A.3d 585, 616 (R.I. 2011).

mindful of the principle that remedial statutes are to be liberally interpreted."); *In re Tavares*, 885 A.2d 139, 146 (R.I. 2005) ("[W]hen construing a statute that is remedial in nature, * * * we will construe the statute liberally to effectuate its purposes."); *Weybosset Hill Investments, LLC v. Rossi*, 857 A.2d 231, 239 (R.I. 2004); *Ayers-Schaffner v. Solomon*, 461 A.2d 396, 399 (R.I. 1983) ("[W]here the statute is remedial, one which affords a remedy, or improves or facilitates remedies already existing for the enforcement of rights [or] redress of wrongs, it is to be construed liberally."). In the instant case, it is clear that, in enacting the statute at issue, the obvious mindset of the General Assembly was one of benignity—to give relief to taxpayers who have come to realize that they have overpaid in the past.

Of equal (if not greater) importance is the fact that we are dealing with a revenue statute; and it is well settled that, when there is doubt as to the meaning of such statutes, the doubt should be resolved in the taxpayer's favor. *See, e.g.*, *Balmuth v. Dolce*, 182 A.3d 576, 585 (R.I. 2018) ("[T]axing statutes are to be strictly construed with doubts resolved in favor of the taxpayer.") (quoting *Maggiacomo v. DiVincenzo*, 122 R.I. 615, 618, 410 A.2d 1332, 1333 (1980)); *deZahara v. Weiss*, 516 A.2d 879, 880 (R.I. 1986) ("[A]ny doubt about the meaning or scope of [all revenue statutes] must be resolved in favor of the taxpayer and against the taxing authority."); *Norberg v. Feist*, 495 A.2d 687, 689 (R.I. 1985) (stating that "all revenue statutes, must be construed strictly, with doubts about its meaning and scope

resolved in favor of the taxpayer and against the taxing authority"); *Newport Gas Light Company v. Norberg*, 114 R.I. 696, 699, 338 A.2d 536, 538 (1975) ("[D]oubts as to the scope and meaning of a tax law are to be resolved in favor of the taxpayer * * *.").[3]

For these several reasons, I believe that the taxpayers in this case should have prevailed. Accordingly, I respectfully but unreservedly dissent.

---

[3] In view of my conviction that the statutory language is clear, I would give little weight to the fact that the Division of Taxation has interpreted § 44-30-87(a) differently and in a manner that is unfavorable to the taxpayers in the instant case. While that agency's interpretation should be considered (and I have done so), I remain absolutely unconvinced by that interpretation—an interpretation that undoubtedly prevents an outflow of a small amount of revenue from the state's coffers but that is contrary to the letter and spirit of the statute. In this regard, I note that we have quite recently stated: "[I]n no case may blind deference be paid to the construction given by any official, agency, or board, as this Court is the final arbiter with respect to questions of statutory construction." *City of Woonsocket v. RISE Prep Mayoral Academy*, 251 A.3d 495, 502 (R.I. 2021) (internal quotation marks and brackets omitted); *see generally Mancini v. City of Providence*, 155 A.3d 159 (R.I. 2017).

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Robert Schmidt et al. v. Rhode Island Division of Taxation. |
| **Case Number** | No. 2024-134-M.P.<br>(A.A. 22-213) |
| **Date Opinion Filed** | March 19, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Sixth Division District Court |
| **Judicial Officer from Lower Court** | Associate Justice Walter Gorman |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Marc DeSisto, Esq. |
| | For Respondent:<br><br>Thomas P. Quinn, Esq. |